Troutman Pepper Hamilton Sanders LLP
301 Carnegie Center, Suite 400
Princeton, NJ 08540

www.troutman.com



Angelo A. Stio III
Partner
D: 609.951.4125
angelo.stio@troutman.com
Admitted in: New Jersey, New York, Pennsylvania

May 31, 2024

**BY ECF**

Honorable Harvey Bartle III, U.S.D.J.
United States District Court for the
   Eastern District of Pennsylvania
16614 U.S. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Re:    **DANIEL'S LAW CASES – SUBJECT MATTER JURISDICTION DISCOVERY**

Dear Judge Bartle:

     This firm represents eleven defendants (the "Troutman Defendants") in the Daniel's Law cases assigned to Your Honor.[1]  We write to advise the Court that we have met and conferred with Plaintiffs' counsel, but the parties are unable to resolve their differences with regard to subject matter jurisdiction discovery.  The differences relate to three areas: (1) the form of the discovery, (2) the scope of discovery, and (3) the specific Requests for Production and Rule 30(b)(6) deposition topics.

---

[1] Troutman Pepper represents defendants in the following matters that are subject to the Consolidated Motion for Remand:

- *Atlas Data Privacy Corp., et al. v. Acxiom LLC, et al.*, (No. 1:24-cv-4107);
- *Atlas Data Privacy Corp., et al. v. AtData, LLC, et al.*, (No. 1:24-cv-4447);
- *Atlas Data Privacy Corp., et al. v. Carco Group Inc., Intellicorp Records, Inc., et al.*, (No. 1:24-cv-4077);
- *Atlas Data Privacy Corp., et al. v. Enformion, LLC, Enformion Holdco, Inc., et al.*, (No. 1:24-cv-4110);
- *Atlas Data Privacy Corp., et al. v. Red Violet, Inc., et al.*, (No. 1:24-cv-4113);
- *Atlas Data Privacy Corp., et al. v. Remine Inc., et al.*, (No. 1:24-cv-4182); and
- *Atlas Data Privacy Corp., et al. v. CoreLogic, Inc., et al.*, (No. 1:24-cv-4230).

Troutman Pepper Hamilton Sanders LLP, a Georgia limited liability partnership
Delia C. Donahue, Partner-in-Charge, Princeton Office

Honorable Harvey Bartle III, U.S.D.J.
May 31, 2024
Page 2



Attached as **Exhibit A** is a copy of the Troutman Defendants' proposed Requests for Production and Rule 30(b)(6) corporate designee deposition notice. Attached as **Exhibit B** are copies of the Plaintiffs' letters outlining topics they propose for discovery.

### A. THE FORM OF SUBJECT MATTER JURISDICTION DISCOVERY

The Plaintiffs object to any formal Request for Production or any Rule 30(b)(6) Notice being served in this case. Plaintiffs do not want to respond to this discovery and identify the documents they are producing, the documents that do not exist, and the documents, if any, that they are withholding from production and the basis for that decision. Instead of formal discovery requests, the Plaintiffs believe the Court should simply enter an order listing items they will produce and topics an Atlas corporate designee will explain. There is no support for this position. Rule of Civil Procedure 34 defines the process for seeking the production of documents, and Rule 30 defines the process for deposing a corporate representative. Both rules require the issuance of a notice for the discovery to be taken, and address responses and objections to outline the information being provided, the information that does not exist, and the that is information is being withheld. *See* Fed. R. Civ. P. 30(b)(6); Fed. R. Civ. P. 34(b).[2]

There is no basis to depart from the procedures required by Rule 34 and Rule 30. These rules establish orderly mechanisms for document production and scheduling a deposition and defining its scope. They should be followed in order to prevent ambiguity and allow the defendants to know the positions Plaintiffs are taking on the discovery ordered by the Court, and whether there is a basis to challenge those positions.

### B. THE SCOPE OF THE SUBJECT MATTER JURISDICTION DISCOVERY

The parties also have a fundamental disagreement as to the appropriate scope of discovery relating to subject matter jurisdiction. Plaintiffs are seeking to narrowly limit discovery to whether the assignments were a "sham," which they contend requires them to only produce the assignment document itself. This is improper. The proper analysis is to focus on the circumstances surrounding the assignment to determine whether Atlas is a real party in interest for purposes of the diversity analysis. *See Attorneys Trust v. Videotape Computer Products, Incorporated*, 93 F.3d 593, 597 (9th Cir. 1996) (holding that courts are "sensitive to and concerned by manipulations of their jurisdiction with partial assignments which lack reality and amount to no change in the identity of the party with the real interest in the outcome of the case").

---

[2] We also believe the Court contemplated the issuance of a Request for Production and a Rule 30(b)(6) Notice during the May 7, 2024 Status Conference. *See* Transcript **Exhibit C**, T. 50:21–25 ("Why don't you, Mr. Stio and Mr. Shaw, get together and submit something to me by Thursday afternoon at 3:00 p.m. on what would be the request for production of documents"); *see also* T. 43:4–5 ("I think we all – and then we would have – there would be a 30(b)(6) deposition.").

A district court has "both the authority and the responsibility, under 28 U.S.C. §§ 1332 and 1441, to examine the motives underlying a partial assignment which destroys diversity and to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal." *Grassi v. Ciba-Geigy, Ltd.*, 894 F. 2d 181, 185 (5th Cir. 1990). In conducting this examination, a court must consider the totality of the circumstances related to an assignment to determine the real party in interest. *Long John Silver's, Inc. v. Architectural Engineering Prod. Co., et al.*, 520 F. Supp. 753, 756 (W.D.Pa. 1981);[3] *Nat'l Fitness Holdings, Inc. v. Grand View Corporate Ctr., LLC,* 749 F.3d 1202 (10th Cir. 2014) (finding a collusive assignment after looking at the totality of the circumstances of the transaction).

The Fifth Circuit Court of Appeals in *Grassi v. Ciba-Geigy, Ltd.* identified the following six non-exclusive factors to consider in determining whether an assignment is partial or collusive: (1) the comparative size of the interest being assigned; (2) whether the assignee held any interest in the litigation before the assignment; (3) whether the assignor and assignee are controlled by the same party; (4) whether the assignment occurred shortly before the litigation commenced; (5) whether the assignment represents what is essentially a contingent fee arrangement for collection work; and (6) whether there is a strong likelihood of prejudice against the defendant. *Grassi,* 894 F. 2d at 186.[4] In the Third Circuit, the Western District of Pennsylvania in *Long John Silver's* also recognized the obligation to evaluate the surrounding circumstances of the transaction and identified additional factors to consider, including: (1) whether the assignor retained "a substantial interest in the litigation," and (2) whether the assignee or assignor is paying for the legal fees and/or directing the litigation. *Long John Silver's*, 520 F. Supp. at 755–756. Consistent with the holdings from *Grassi* and *Long John Silver's*, discovery on subject matter jurisdiction must include inquiries into the totality of the circumstances surrounding the assignments to determine the real party in interest and not solely on the language of the assignments themselves.

---

[3] Although the court in *Long John Silver's Inc.* was evaluating whether a collusive assignment was done with the purpose of creating diversity jurisdiction, as opposed to defeating diversity jurisdiction, courts generally apply the same set of factors to determine if a partial assignment was collusive and should be disregarded for the purposes of assessing jurisdiction. *See, e.g., Hellerstein v. Desert Lifestyles*, 2018 U.S. Dist. LEXIS 55532, at *12 (D. Nev. March 31, 2018) (explaining that "[b]ecause of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard; that is, the issue of whether the assignment was improperly or collusively made is to be resolved as a simple question of fact") (quoting *Attorneys Trust v. Videotape Computer Prods.,* 93 F.3d 593, 598 (9th Cir. 1996)).

[4] *See also NPM Mgmt. & Bldg. Servs. v. Geismar N. Am., Inc.*, 2001 U.S. Dist. LEXIS 217561, *9–10 (E.D. La. Nov. 10, 2021) (applying the *Grassi* collusive assignment factors and finding that the assignment was partial and collusive, and assignment could be disregarded for purposes of determining whether diversity exists); *JMTR Enterprises, L.L.C. v. Duchin,* 42 F. Supp. 2d 87, 92 (D. Mass. 1999) (relying upon *Grassi* to determine if there was a collusive assignment).

Honorable Harvey Bartle III, U.S.D.J.
May 31, 2024
Page 4



In addition to the case law, the facts here provide a legitimate basis to question the motivations for the purported assignments and the real party in interest. The Troutman Defendants have discovered that Atlas began communicating with and recruiting law enforcement officers from the New Jersey Police Benevolent Association ("PBA") as far back as April 2023. This is made clear by an April 5, 2023 President's Message, that then PBA President Patrick Colligan wrote to PBA members directing them to use Atlas's services, stating:

> The time is now to sign up for protection under Daniel's Law through Atlas Privacy. If you don't know about either, please speak to your State Delegate ASAP. The time to sign up is not after an event. By then it is too late. Otherwise you might see your photo, your house, your business and your salary on a website.

*See* **Exhibit D** (emphasis added). This recruitment of PBA members for Atlas's services occurred four months prior to Daniel's Law being amended to permit claims to be assigned to third parties. And, then, instead of promptly sending the non-disclosure requests, Atlas apparently decided to hold thousands of such requests for an additional four months before Atlas then sent the requests in mass in December 2023 and January 2024 to the defendants. Atlas was motivated to manufacture a lawsuit against Defendants (and potentially one that attempted to avoided federal jurisdiction through use of assignments). These actions justify an examination into the circumstances surrounding the assignments that Atlas allegedly solicited from thousands of people—including communications with the PBA leadership and others about the assignments, the Covered Persons' rights, the litigations that Atlas planned to file, and communications with assignors about the interest in the Daniel's Law claims, including fees and financial considerations. While defendants have limited information about Atlas' prelitigation conduct, the requests made here by defendants are reasonably calculated to lead to the discovery of additional relevant facts that further support the defendants' jurisdictional arguments.

    **C.**    **THE SPECIFIC REQUESTS FOR PRODUCTION IN DISPUTE**

Leaving aside the dispute over the form of the discovery, the Troutman Defendants believe there is no dispute about requests 1, 2, 4, 6, 7 and 10 from Troutman Defendants' Request for Production, which is attached as **Exhibit A**. The requests that are in dispute and the Troutman Defendants' position on why the requests are appropriate are outlined below.

*THE TROUTMAN DEFENDANTS' REQUESTS FOR PRODUCTION*

**3.**    **All communications to/from Atlas concerning the impact of the assignments on federal court jurisdiction over the Daniel's Law actions filed or contemplated to be filed by Atlas.**

Honorable Harvey Bartle III, U.S.D.J.
May 31, 2024
Page 5



This request is relevant to subject matter jurisdiction because it seeks information directly related to the court's inquiry of whether an assignment was made for the purpose of limiting the federal court's jurisdiction over the lawsuits. *See Attorneys Tr. v. Videotape Computer Prods.*, 93 F.3d 593, 598 (9th Cir. 1996) (recognizing assignments to destroy diversity are collusive and can be disregarded for purposes of diversity).

5.  **All documents referring to the efforts of Atlas and involvement in amending Daniel's Law to include the ability to assign claims to a third party.**

This request is appropriate because it seeks to examine the circumstances surrounding and motives for the assignments. This request seeks to discover the communications between Atlas and New Jersey State legislators, PBA leadership and PBA members about the assignments, the Covered Persons' rights, and Atlas's ability to pursue the litigations. Discovery related to these issues should occur as part of defendants' review of the totality of circumstances related to the assignments to determine the real party in interest under the *Grassi* and *Long John Silver's* factors. In addition, Atlas's lobbying efforts to amend Daniel's Law to include the assignment provision are relevant to whether Atlas intended to avoid bringing these litigations as a class action, which would have been subject to federal jurisdiction under the Class Action Fairness Act ("CAFA").

8.  **All documents referring to disputes about control over and/or interests in Daniel's Law-related claim assignments to Atlas.**

This request is appropriate and relevant to subject matter jurisdiction because it seeks information related to the *Grassi* and *Long John Silver's* factors concerning control of the litigation and whether the assignments were partial assignments. Similarly, any material responsive to the request is also potentially relevant to defendants' CAFA-based removal arguments.

9.  **All documents reflecting whether Atlas and the purported assignors at issue have separate and/or common counsel.**

This request is relevant to subject matter jurisdiction because it seeks information directly related to the *Grassi* and *Long John Silver's* factors concerning control of the litigation and payment of legal fees and expenses. Similarly, any material responsive to the request is also potentially relevant to defendants' CAFA-based removal arguments.

* * *

D.  **THE SPECIFIC RULE 30(B)(6) TOPICS**

The Troutman Defendants believe the parties are in agreement on topics 1, 3, 11, and 12 from Troutman's proposed Rule 30(b)(6) Notice, which is attached as **Exhibit A**. The topics that are in dispute are listed below with the Troutman Defendants' explanation of why each topic is appropriate for the deposition of an Atlas corporate representative.

Honorable Harvey Bartle III, U.S.D.J.
May 31, 2024
Page 6



## THE PROPOSED RULE 30(b)(6) TOPICS

**2.      Atlas's determination about whether and to whom to send (or not send) Assignment Confirmations, referenced in the Service Terms, including but not limited to determinations regarding the individual named Plaintiffs identified in the Complaints who allegedly have not assigned their claims to Atlas.**

This topic is appropriate because it goes directly to the issue of the real parties in interest, whether the assignments were partial and the *Grassi* and *Long John Silver's* factors related to control and retained interests in the litigation.

**4.      Atlas's interest in the Daniel's Law rights being asserted in the actions prior to obtaining the assignments.**

This topic is relevant to the *Grassi* factor concerning whether Atlas held any interest in the litigation before the assignments were obtained.

**5.      Atlas's relationship with the Assignors.**

This topic is relevant to understanding the real parties in interest in the litigations, whether the assignments are partial, when the assignments occurred, and the *Long John Silver's* factor related to control of the litigation. Similarly, this topic is potentially relevant to defendants' CAFA-based removal arguments.

**6.      Any participation or interest in the above-captioned actions by any purported Assignor.**

This topic is relevant to understanding the real parties in interest in the litigations, whether the assignments are partial, when the assignments occurred, and the *Long John Silver's* factor related to control of the litigation. Similarly, this topic is potentially relevant to defendants' CAFA-based removal arguments.

**7.      Atlas's ability to identify or communicate with any Assignor, including but not limited to during litigation of the above-captioned actions.**

This topic is relevant to understanding the real parties in interest in the litigations, whether the assignments are partial, when the assignments occurred, and the *Long John Silver's* factor related to control of the litigation. Similarly, this topic is potentially relevant to defendants' CAFA-based removal arguments.

**8.      Atlas's ability to identify any alleged damages of any Assignor.**

Honorable Harvey Bartle III, U.S.D.J.
May 31, 2024
Page 7



This topic is relevant to understanding the real parties in interest in the litigations and the *Long John Silver's* factors related to control of the litigation and the nature and amount of the assignors' interest in the litigation. Similarly, this topic is potentially relevant to defendants' CAFA-based removal arguments.

**9.   Communications with any Assignor about any potential or actual lawsuits brought by Atlas.**

This topic is relevant to the real parties in interest in the litigations, whether the rights assigned were partial, who controls the litigation, and whether Atlas is acting as a mere collection agent. *See Long John Silver's, Inc.*, 520 F. Supp. at 755–57 and *Grassi,* 894 F. 2d at 185. Similarly, this topic is potentially relevant to defendants' CAFA-based removal arguments.

**10.   The responsibility for payment of legal fees and expenses incurred in the above-captioned actions.**

This request is relevant to subject matter jurisdiction because it seeks information related to the *Grassi* and *Long John Silver's* factors concerning control of the litigation, and payment of legal fees and expenses.

**13.   Atlas's efforts and involvement in amending Daniel's Law to include a provision to allow for the assignment of claims.**

The Troutman Defendants should be permitted to explore whether there are any communications referring to Atlas's efforts to amend Daniel's Law to include a provision permitting the assignment of claims. This information relates to the totality of circumstances surrounding the assignments and any motivations for obtaining the assignments, including whether Atlas lobbied for the assignment provision to avoid bringing these litigations as a class action, which would have been subject to federal jurisdiction under CAFA.

We trust this letter outlines the issues in dispute and the factual and legal basis for the subject matter jurisdiction discovery that the Troutman Defendants would like to pursue. We thank the Court for its consideration of this submission and look forward to discussing it on June 3, 2024.

                                                                Respectfully,

                                                                Angelo A. Stio III



Honorable Harvey Bartle III, U.S.D.J.
May 31, 2024
Page 8

---

cc:    Rajiv Parikh, Esq.
        Adam Shaw, Esq.
        John Yanchunis, Esq.
        Ryan McGee, Esq.
        Mark C. Mao, Esq.
        James Lee, Esq.