# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>　　　　　Plaintiffs,<br>v.<br><br>BLACKBAUD, INC., et al.,<br><br>　　　　　Defendants. | Civ. Action No. 24-03993-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>　　　　　Plaintiffs,<br>v.<br><br>WHITEPAGES, INC., et al.,<br><br>　　　　　Defendants. | Civ. Action No. 24-03998-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>　　　　　Plaintiffs,<br>v.<br><br>HIYA, INC., et al.,<br><br>　　　　　Defendants. | Civ. Action No. 24-04000-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>　　　　　Plaintiffs,<br>v.<br><br>ACXIOM, LLC, et al.,<br><br>　　　　　Defendants. | Civ. Action No. 24-04107-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COMMERCIAL REAL ESTATE EXCHANGE, INC., et al., <br><br> Defendants. | Civ. Action No. 24-04073-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CARCO GROUP INC., et al., <br><br> Defendants. | Civ. Action No. 24-04077-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TWILIO, INC., et al., <br><br> Defendants. | Civ. Action No. 24-04095-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> 6SENSE INSIGHTS, INC., et al., <br><br> Defendants. | Civ. Action No. 24-04104-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LIGHTBOX PARENT, L.P., et al., <br><br> Defendants. | Civ. Action No. 24-04105-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> SEARCH QUARRY, LLC, et al., <br><br> Defendants. | Civ. Action No. 24-04106-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> ENFORMION, et al., <br><br> Defendants. | Civ. Action No. 24-04110-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> COSTAR GROUP, INC., et al., <br><br> Defendants. | Civ. Action No. 24-04111-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> ORACLE INTERNATIONAL CORPORATION, et al., <br><br> Defendants. | Civ. Action No. 24-04112-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> RED VIOLET, INC., et al., <br><br> Defendants. | Civ. Action No. 24-04113-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br>v.<br><br>RE/MAX, LLC, et al.,<br><br>Defendants. | Civ. Action No. 24-04114-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br>v.<br><br>EPSILON DATA MANAGEMENT, LLC, et al.,<br><br>Defendants. | Civ. Action No. 24-04168-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br>v.<br><br>PEOPLE DATA LABS, INC., et al.,<br><br>Defendants. | Civ. Action No. 24-04171-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br>v.<br><br>CLARITAS, et al.,<br><br>Defendants. | Civ. Action No. 24-04175-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br>v.<br><br>DATA AXLE, INC., et al.,<br><br>Defendants. | Civ. Action No. 24-04181-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civ. Action No. 24-04182-HB |
| REMINE, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civ. Action No. 24-04184-HB |
| LUSHA SYSTEMS, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civ. Action No. 24-04217-HB |
| TELTECH SYSTEMS, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civ. Action No. 24-04227-HB |
| PEOPLECONNECT, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civ. Action No. 24-04230-HB |
| CORELOGIC, INC., et al., | |
| Defendants. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BLACK KNIGHT TECHNOLOGIES, LLC, et al., <br><br> Defendants. | Civ. Action No. 24-04233-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THOMSON REUTERS CORPORATION, et al., <br><br> Defendants. | Civ. Action No. 24-04269-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CHOREOGRAPH LLC, et al., <br><br> Defendants. | Civ. Action No. 24-04271-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TRANSUNION, LLC, et al., <br><br> Defendants. | Civ. Action No. 24-04288-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al.,<br><br>          Plaintiffs,<br>v.<br><br>EQUIFAX, INC., et al.,<br><br>          Defendants. | Civ. Action No. 24-04298-HB |
| ATLAS DATA PRIVACY<br>CORPORATION, et al.,<br><br>          Plaintiffs,<br>v.<br><br>SPOKEO, INC., et al.,<br><br>          Defendants. | Civ. Action No. 24-04299-HB |
| ATLAS DATA PRIVACY<br>CORPORATION, et al.,<br><br>          Plaintiffs,<br>v.<br><br>TELNYX LLC, et al.,<br><br>          Defendants. | Civ. Action No. 24-04354-HB |
| ATLAS DATA PRIVACY<br>CORPORATION, et al.,<br><br>          Plaintiffs,<br>v.<br><br>MYHERITAGE, LTD, et al.,<br><br>          Defendants. | Civ. Action No. 24-04392-HB |
| ATLAS DATA PRIVACY<br>CORPORATION, et al.,<br><br>          Plaintiffs,<br>v.<br><br>WILAND, INC., et al.,<br><br>          Defendants. | Civ. Action No. 24-04442-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> VALASSIS DIGITAL CORP., ET AL., et al., <br><br> Defendants. | Civ. Action No. 24-04770-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ATDATA, LLC, et al., <br><br> Defendants. | Civ. Action No. 24-04447-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PRECISELY HOLDINGS, LLC, ET AL., et al., <br><br> Defendants. | Civ. Action No. 24-04571-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> OUTSIDE INTERACTIVE, INC., et al., <br><br> Defendants. | Civ. Action No. 24-04696-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE LIFETIME VALUE CO. LLC, ET AL., et al., <br><br> Defendants. | Civ. Action No. 24-04850-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FIRST AMERICAN FINANCIAL CORPORATION ET AL, et al., <br><br> Defendants. | Civ. Action No. 24-05334-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LEXISNEXIS RISK DATA MANAGEMENT, LLC et al., <br><br> Defendants. | Civ. Action No. 24-06160-HB |

**PLAINTIFFS' CONSOLIDATED REPLY BRIEF IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR REMAND**

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT.........................................................................1

II.  LEGAL ARGUMENT ..................................................................................2

    A.   Defendants' Jurisdictional Analysis Misses the Critical Issue and Is
        Otherwise Flawed and Unsupported..............................................................2

        *i.   The Purpose of the Court's Analysis is to Prevent Plaintiffs from
           Manufacturing Jurisdiction* ....................................................................3

        *ii.  Even When Courts Look at Factors, the Critical Inquiry is Whether
            Jurisdictional Manipulation Occurred* ...................................................6

        *iii. Plaintiffs Did Not Manipulate Jurisdiction, and Defendants Have Not
            Met Their Burden to Establish Jurisdiction in These Cases* .................9

    B.   The Totality of the Circumstance Do Not Weigh in Favor of Finding
        Collusion ..................................................................................................11

        *i.   The Nature of Atlas's Assignments Do Not Weigh in Favor of Finding
            Any Collusion* .......................................................................................12

        *ii.  The Timing of the Assignments Do Not Evidence Collusion* ...............15

        *iii. Daniel's Law Expressly Provides for the Assignment of Claims to be
            Enforced in New Jersey State Court* .....................................................16

        *iv.  Plaintiffs' Counsel Does Not Represent the Covered Persons* ...........16

    C.   There is No Basis to Find Fraudulent Joinder ..........................................17

    D.   CAFA is Not Applicable ..........................................................................20

        *i.   Hood squarely defeats Defendants' CAFA Mass Action Argument*.....20

        *ii.  Daniel's Law is Not Equivalent to Rule 23* .........................................22

III. CONCLUSION ..............................................................................30

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                            <u>**Page(s)**</u>

*Addison Automatics, Inc. v. Hartford Cas. Ins. Co.,*
   731 F. 3d 740 (7th Cir. 2013)................................................................. 27, 28, 29

*Att'ys Tr. v. Videotape Computer Prod., Inc.,*
   93 F.3d 593 (9th Cir. 1996)............................................................................. 6, 8

*Batoff v. State Farm Ins. Co.,*
   977 F.2d 848 (3d Cir. 1992)................................................................................ 18

*Bernblum v. Travelers' Ins. Co.,*
   9 F.Supp. 34 (W.D.Mo. 1934) ............................................................................. 5

*Boyer v. Snap-on Tools Corp.,*
   913 F.2d 108 (3d Cir. 1990)....................................................................... 3, 9, 18

*Carter v. Seaboard Coast Line R. Co.,*
   318 F. Supp. 368 (D.S.C. 1970)......................................................................... 18

*Curley v. Mercury Ins. Servs., LLC,*
   2022 WL 445633 (D.N.J. Feb. 10, 2022) .......................................................... 18

*Erie Ins. Exchange v. Erie Indem. Co. ("Erie I")*
   722 F.3d 154 (3d Cir. 2013)................................................................... 2, 23, 25

*Erie Ins. Exch. by Stephenson v. Erie Indem. Co. ("Erie II")*
   68 F.4th 815 (3rd Cir. 2023) ......................................................................... 2, 22

*Franco, Lewis & Co. v. Callahan,*
   1994 WL 744304 (D.N.J. Aug. 22, 1994) ........................................................... 4

*Gentle v. Lamb-Weston, Inc.,*
   302 F. Supp. 161, 165 (D. Me. 1969) ................................................................ 10

*Grassi v. Ciba-Geigy, Ltd.,*
   894 F.2d 181 (5th Cir. 1990)............................................................... 6, 7, 8, 9, 11

*Hair v. Savannah Steel Drum Corp.,*
 161 F.Supp. 654 (E.D.S.C. 1955) .......................................................................... 5

*Heape v. Sullivan,*
 246 S.C. 218, 143 S.E.2d 366 (1965) .................................................................... 5

*Miss. ex rel. Hood v. AU Optronics Corp.,*
 571 U.S. 161 (2014) ............................................................................... 2, 20, 21

*King v. McMillan,*
 252 F.Supp. 390 (D.S.C. 1966) ............................................................................. 5

*Kramer v. Caribbean Mills, Inc.,*
 394 U.S. 823 (1969) ......................................................................................... 4, 5

*Krenzien v. United Services Life Ins. Co. of Washington, D.C.,*
 121 F.Supp. 243 (D.Kan. 1954) ........................................................................... 5

*Lerner v. Fleet Bank, N.A.,*
 318 F.3d 113 (2d Cir. 2003) ................................................................................. 3

*Leshem v. Continental American Life Ins. Co.,*
 219 F.Supp. 504 (S.D.N.Y.1963) .......................................................................... 5

*Liberty Mut. Fire Ins. Co. v. EZ-FLO Int'l, Inc.,*
 877 F.3d 1081 (9th Cir. 2017) ............................................................................ 21

*Long John Silver's, Inc. v. Architectural Eng'g Prod. Co.,*
 520 F. Supp. 753 (W.D. Pa. 1981) ............................................................... Passim

*McSparran v. Weist,*
 402 F.2d 867 (3d Cir. 1968) ....................................................................... 1, 9, 10

*Neale v. Volvo Cars of North America, LLC,*
 794 F. 3d 353 (3rd Cir. 2015) ............................................................................ 24

*Ridgeland Box Mfg. Co. v. Sinclair Refining Co.,*
 82 F.Supp. 274 (E.D.S.C. 1949) ........................................................................... 5

iii

*Rosecrans v. William S. Lozier, Inc.*,
  142 F.2d 118 (8th Cir. 1944) ................................................................. 5

*Schepman v. Mut. Ben. Health & Acc. Ass'n*,
  104 S.W.2d 777 (1937) ....................................................................... 5

*Verschell v. Fireman's Fund Ins. Co.*,
  257 F.Supp. 153 (S.D.N.Y. 1966) ........................................................ 5

*Wecker v. Nat'l Enameling & Stamping Co.*,
  204 U.S. 176 (1907) ......................................................................... 17

*Westinghouse Credit Corp. v. Shelton*,
  645 F.2d 869 (10th Cir. 1981) ............................................................ 14

*Williams v. Employers Casualty Co.*,
  845 F. 3d 891 (8th Cir. 2017) ................................................ 23, 27, 28, 29

## Federal Statutes

28 U.S.C. § 80 (1940 ed.) ...................................................................... 4

28 U.S.C. § 1359 .......................................................................... 4, 5, 6

## State Statutes

N.J.S.A. 2C:20-31.1 ........................................................................... 19

N.J.S.A. 47:1A-1 .............................................................................. 19

N.J.S.A. 47:1B-2(d) ........................................................................... 26

N.J.S.A. 47:1B-2(d)(1)-(6) .................................................................... 26

N.J.S.A 56:8-166.1 ............................................................................ 19

N.J.S.A 56:8-166.1(b) ......................................................................... 16

Plaintiffs Atlas Data Privacy Corporation ("Atlas"), Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan (together, "Individual Plaintiffs") (collectively, "Plaintiffs") respectfully submit this reply in support of their consolidated motion to remand the above-captioned cases[1] to the Superior Court of New Jersey Law Division for lack of subject matter jurisdiction.

## I.    PRELIMINARY STATEMENT

Defendants bear the "considerable" burden of proving all the necessary facts to invoke this Court's jurisdiction, particularly in cases like the present where diversity jurisdiction may infringe upon the state courts. *McSparran v. Weist*, 402 F.2d 867, 875 (3d Cir. 1968). After conducting substantial jurisdictional discovery and distorting case law to fit their narrative, Defendants have not, and cannot, satisfy their burden.

*One*, regardless of how Defendants misconstrue the jurisdictional analysis, the totality of the circumstances here prove that Atlas's assignments do not manipulate jurisdiction. As such, Atlas is not a mere shell or collection agent, and its Delaware citizenship must be considered when evaluating diversity jurisdiction.

*Two*, CAFA is a statutory basis for federal jurisdictional and must be narrowly construed. Defendants' proposal here—to pierce the parties and the pleadings in

---

[1] The caption includes only those cases which Plaintiffs seek to remand.

order to treat these cases as a class or mass action—has been expressly considered and rejected by the Supreme Court in *Hood* and Third Circuit in *Erie I, II*. Defendants' efforts to stretch the statute and distinguish controlling precedent is unavailing.

## II.    LEGAL ARGUMENT

### A. Defendants' Jurisdictional Analysis Misses the Critical Issue and Is Otherwise Flawed and Unsupported

Defendants' jurisdictional analysis is fundamentally flawed. The critical inquiry before the Court is whether a party was joined or added, by assignment or other means, for the purpose of manipulating the Court's jurisdiction. The answer here is a resounding no. Defendants sought and obtained discovery, and there is zero evidence supporting their baseless jurisdiction manipulation theory.

Unable to satisfy their burden, Defendants incorrectly shift the focus to whether Atlas is a real party in interest. Atlas is, of course, a real party in interest having effectuated enforceable, irrevocable assignments with the Covered Persons consistent with the provisions of Daniel's Law for good and fair consideration and for the legitimate (and beneficial) purpose of enforcing Daniel's Law. But that is not even what the Court is deciding at the jurisdictional stage.

The reason for using "multi-factors" or evaluating the "totality of the circumstances," including motive, is to prevent parties from using procedural devices or assignments for the purpose of destroying diversity jurisdiction. That

never happened here. The assignments were made consistent with Daniel's Law and for the purpose of seeking compliance with Daniel's Law, not for the purpose of destroying any diversity jurisdiction.

>    i.    *The Purpose of the Court's Analysis is to Prevent Plaintiffs from Manufacturing Jurisdiction*

The legislative progression and policy behind the anti-collusion statue is useful in understanding the proper jurisdictional analysis to be employed by the Court. As master of the complaint, a plaintiff is entitled to craft her claims and identify parties to strategically select which forum to litigate the claims. "While the plaintiff's decision in this regard may have repercussions for purposes of diversity jurisdiction, there is no reason for a court to interfere with this inevitable consequence of a plaintiff's election ***unless*** the plaintiff had impermissibly manufactured diversity or ***used an unacceptable device to defeat diversity***." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 110 (3d Cir. 1990) (emphasis added); *see, e.g.*, *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 125 (2d Cir. 2003), *as amended* (Apr. 16, 2003) (plaintiff's decision to choose among a group of potential co-plaintiffs based on diversity concerns is not a prohibited manufacture of diversity).

A problem occurs, however, when parties improperly use devices—such as assignments, appointments, joinder, etc.—to manufacture jurisdiction and thereby gain access to federal courts of limited jurisdiction. "These practices are prohibited because the parties, through manipulation, have funneled what are essentially local

3

disputes between non-diverse parties into the federal courts." *Id.* To prevent this possibility, Congress enacted and subsequently amended[2] the first general statute that sought to prevent the collusive creation of diversity of citizenship jurisdiction and empowered federal courts to remand a suit to state court only where "the parties to said suit have been improperly or collusively made or joined for the purpose of creating" diversity jurisdiction. *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 826 (1969) (quoting 28 U.S.C. § 80 (1940 ed.))*; Long John Silver's, Inc. v. Architectural Eng'g Prod. Co.*, 520 F. Supp. 753, 755-56 (W.D. Pa. 1981) (Diamond, J.).

In its present-day form, this anti-collusion statute ("Section 1359") provides that federal courts do not have jurisdiction over civil actions "in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. The case law makes it clear that Section 1359 seeks to prevent agreements or transactions intended to manufacture federal diversity jurisdiction where it otherwise would not exist. *See, e.g.*, *Franco, Lewis & Co. v. Callahan*, No. CIV A. 94-1027 (WGB), 1994 WL 744304, at *15 (D.N.J. Aug. 22, 1994) ("Section 1359 is designed to prevent assignments for the purpose of creating diversity jurisdiction.").

---

[2] The first Judiciary Act of 1789, 1 Stat. 73, sought to restrain manufactured diversity jurisdiction by virtue of assignment of the plaintiff's claim, and a more general effort to avoid collusively created diversity was enacted in 1875. *See* Pub.L. No. 61–7031, 36 Stat. 1087, 1098.

Courts have found this statute violated when a nominal party has no real stake in the outcome of a case such that the only possible reason for its involvement is to create jurisdiction. *See, e.g., Kramer*, 394 U.S. 823, at 827–28 (finding that a party improperly manufactured jurisdiction where he "total[ly] lack[ed] [a] previous connection with the matter" and "candidly admit[ted] that the assignment was in substantial part motivated by a desire…to make diversity jurisdiction available") (internal quotation marks omitted)).

There is no parallel statute expressly prohibiting the inverse situation of Section 1359, *i.e.*, the use of tactical devices to *defeat* federal jurisdiction. This lack of express legislative direction was long recognized by courts as reason to refrain from questioning facially valid assignments, even if it appeared obvious that they were being used solely to destroy federal jurisdiction.[3] Courts followed this approach on the rationale that it limited the number of suits that reached the federal

---

[3] *See, e.g.*, *Rosecrans v. William S. Lozier, Inc*., 142 F.2d 118 (8th Cir. 1944); *King v. McMillan*, 252 F.Supp. 390 (D.S.C. 1966); *Leshem v. Continental American Life Ins. Co.*, 219 F.Supp. 504 (S.D.N.Y.1963); *Hair v. Savannah Steel Drum Corp.*, 161 F.Supp. 654 (E.D.S.C. 1955); *Krenzien v. United Services Life Ins. Co. of Washington, D.C.*, 121 F.Supp. 243 (D.Kan. 1954); *Ridgeland Box Mfg. Co. v. Sinclair Refining Co.*, 82 F.Supp. 274 (E.D.S.C. 1949); *Bernblum v. Travelers' Ins. Co.*, 9 F.Supp. 34 (W.D.Mo. 1934); *Verschell v. Fireman's Fund Ins. Co.*, 257 F.Supp. 153 (S.D.N.Y. 1966) (dictum); *Heape v. Sullivan*, 246 S.C. 218, 143 S.E.2d 366 (1965) (assignment of 1/100th part of claim held valid); *Schepman v. Mut. Ben. Health & Acc. Ass'n*, 104 S.W.2d 777, 231 (1937) (claimant may assign claim solely for collection purposes).

courts by way of removal, thus reinforcing the principle that the federal courts are forums of limited subject matter jurisdiction.

More recently, however, and in response to the rising abuse of assignment devices to manipulate jurisdiction, some federal courts have extended Section 1359's principles to cases where parties utilize assignments to *destroy* diversity. *See, e.g.*, *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990) ("Because of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard"); *see also Att'ys Tr. v. Videotape Computer Prod., Inc.,* 93 F.3d 593, 595 (9th Cir. 1996) (noting that the "informing principles are much the same" between Section 1359 cases involving the *creation* of diversity and cases involving the *destruction* of diversity). However, the absence of a statute dealing with destroying diversity does not expand the court's inquiry beyond the scope of Section 1359; it means courts should look to the limits of Section 1359. Thus, the core principle and analysis remain the same: prevent the manipulation of the federal court's jurisdiction.

    ii.    *Even When Courts Look at Factors, the Critical Inquiry is Whether Jurisdictional Manipulation Occurred*

Defendants miss the mark and rely on a multi-factor test employed by the Fifth Circuit in *Grassi* and followed by the Ninth Circuit in *Attorneys Trust*,[4]

---

[4] Neither *Grassi* nor *Attorney Trust* are controlling precedent for this Court, and the Third Circuit has never adopted the factor analysis employed in these cases. The

asserting that the focus is to determine "the real party in interest as part of a diversity jurisdiction analysis." Opp. at 21.[5] To that end, Defendants spend the majority of their opposition proceeding through a series of facts concerning the type, timing and terms of Atlas's assignments, all aimed at painting Atlas as a sham assignee. Opp. at 18-31. But Defendants' own authorities confirm that they continue to overlook the critical inquiry before the Court. The very first line of the *Grassi* opinion identifies the core issue:

> Today's case presents the issue of whether a federal district court, in denying a plaintiff's motion to remand, may disregard a partial assignment ***made for the purpose of destroying diversity jurisdiction***.

*Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 182 (5th Cir. 1990) (emphasis added). The *Grassi* court did not purport to disregard *all* partial assignments—the jurisdictional analysis turned on whether such assignment was "***made for the purpose of destroying diversity jurisdiction.***" *Id.* (emphasis added). To drill down on whether the assignment was "made for the purpose of destroying diversity jurisdiction," the *Grassi* court affirmed the lower court's consideration of multiple factors which it deemed probative of the underlying question. *Id.* And although the

_____

Court here, should look to the guidance of *Long John Silver's, Inc. v. Architectural Eng'g Prod. Co.*, 520 F. Supp. 753, 756 (W.D. Pa. 1981) (Diamond, J.) for the proper analysis.

[5] Unless stated otherwise, citations to "Opp." refer to Defendants' Consolidated Brief in Opposition to Plaintiffs' Consolidated Motion for Remand filed in *Atlas v. Carco Group Inc.*, Case No. 1:24-cv-0477.

"real party in interest" is indeed a factor considered by some courts in conducting this analysis, it is merely one fact to help answer the ultimate question. The *Grassi* court concluded: "The factors noted by the district court are supported by the record and are sufficient to support a finding that ***the overriding motive behind the present assignment was the desire of the Grassis to remain in state court***." *Id.* at 186 (emphasis added.)

*Grassi*, therefore, underscores and supports Plaintiffs' position: the multi-factors are helpful insofar as they assist the Court in determining whether the assignments were "made principally to defeat removal." *Id.* at 185.

*Attorneys Trust*, also relied upon by Defendants, sidestepped the precise issue decided by the *Grassi* court and expressly limited its holding to an action filed in a district court in the first instance. *Att'ys Tr. v. Videotape Computer Prod., Inc*., 93 F.3d 593, 600 (9th Cir. 1996). Although *Attorneys Trust* is not applicable here (because Plaintiffs originally filed these cases in state court—not district court), the opinion nevertheless confirms that courts undertake the factor analysis because "courts have remained sensitive to and ***concerned by manipulations of their jurisdiction*** with partial assignments which ***lack reality***." *Id.* at 596-97 (emphasis added).

### iii. Plaintiffs Did Not Manipulate Jurisdiction, and Defendants Have Not Met Their Burden to Establish Jurisdiction in These Cases

Courts in the Third Circuit have historically looked at a variety of factors to determine, under the totality of the circumstances, whether the parties have impermissibly manipulated jurisdiction. *See, e.g., McSparran v. Weist*, 402 F.2d 867, 876 (3d Cir. 1968) ("manufactured" diversity of citizenship, by appointment of out-of-state guardian to prosecute suit of resident minor, did not constitute adequate foundation for federal jurisdiction); *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108 (3d Cir. 1990) (noting that court will abide by plaintiff's election of defendants unless the plaintiff impermissibly manufactured diversity or used an acceptable device to defeat diversity); *Long John Silver's, Inc. v. Architectural Eng'g Prod. Co.*, 520 F. Supp. 753, 756 (W.D. Pa. 1981) (Diamond, J.) (analysis focused on finding "manufactured jurisdiction"). The Third Circuit confirmed that a factual inquiry is required to determine whether "manufactured jurisdiction" is present. *McSparran*, 402 F.2d 867 at 876. The *McSparran* court explained: "[w]hether in an individual case diversity jurisdiction is 'manufactured' is, of course, a question of fact. Here 'manufactured' diversity is conceded, but in other cases where it is not conceded it will be for the district court to make the factual determination." *Id*.

In a single action with a few parties—like those using *Grassi*'s multi-factors—courts may have occasion to explore the circumstances surrounding an

assignment to determine whether it is in fact a sham device made to defeat federal jurisdiction. But weighing a multitude of factors is not needed in this case where the conclusion is facially apparent, and no jurisdictional manipulation has occurred. Certification of Rajiv D. Parikh [6] ("Parikh Decl."), Ex. A at 312:1-314:12. Defendants have not met and cannot possibly meet their "considerable" burden of proving that Plaintiffs manufactured or manipulated jurisdiction where the assignments were made consistent with Daniel's Law and Plaintiffs have filed over one hundred cases against hundreds of defendants. *McSparran*, 402 F.2d 867 at 875.

For the Court to accept Defendants' theory and disregard Atlas's citizenship on the basis that the Daniel's Law assignments are nothing more than "cleverly-designed maneuvers designed by ingenious counsel to defeat [federal jurisdiction]" (*Gentle v. Lamb-Weston, Inc*., 302 F. Supp. 161, 165 (D. Me. 1969)), the Court would need to accept an absurd series of facts:

1) First, that Atlas was incorporated back in 2021 under the laws of the State of Delaware with the forethought of destroying diversity with future Delaware-based Defendants.

2) Second, that each of the thousands of law enforcement officers and other Covered Persons knew the state of incorporation and principal place of

---

[6] The Certification of Rajiv D. Parikh and accompanying Exhibit A are filed concurrently with Plaintiffs' reply brief.

business for hundreds of data brokers and selected to send nondisclosure requests to those with Delaware or New Jersey citizenships.

3)  Third, that Atlas and the Covered Persons subsequently entered into the Daniel's Law assignments with the understanding and purpose of defeating federal diversity jurisdiction and pursuing litigation in state court.

4)  And finally, that Plaintiffs and the Covered Persons specifically targeted this random subset of forty (40) removed cases (out of the dozen of similarly situated cases and defendants still in federal court) to proceed in state court for the purpose of avoiding federal court.

Defendants' theory is illogical and unsupported by the facts. The analysis ends there.

### B. The Totality of the Circumstance Do Not Weigh in Favor of Finding Collusion

Even if the Court decided to evaluate factors here, Plaintiffs' remand motion should still be granted because the facts do not "support a finding that ***the overriding motive behind the present assignment was the desire of the [Plaintiffs] to remain in state court***." *Grassi*, 894 F.2d 181 at 186 (emphasis added.)  In the Third Circuit, "***motive must be considered*** together with a determination as to whether the assignment was real or colorable and whether there is the presence or absence of some independent, pre-existing legitimate interest in the assignee." *Long John*

11

*Silver's, Inc.*, 520 F. Supp. 753 at 756 (emphasis added.). The *Long John Silver*

analysis for evaluating a potentially collusive assignment[7] is instructive:

> [E]ven assuming that we conclude that an interest of some indefinable
> nature is retained, that does not end our inquiry…***retention of a
> substantial interest in the litigation***, while perhaps the most important
> factor to be examined, ***is not alone determinative***. Inquiry must be had
> into all the circumstances surrounding the transfer. ***The other factors
> which we believe to be significant are, first, that this litigation in its
> entirety is being paid for and directed by LJS***. *See id*. at 1012.
> Obviously, therefore, LJS is to be distinguished from other assignees
> who, in view of the assignor's retention of the beneficial interest in the
> claim, have been characterized as mere collection agents. ***Collection
> agents in this context do not assume legal fees and costs and direct
> litigation***. Secondly, and ***most importantly it is clear that LJS had a
> legitimate independent business interest in this dispute which
> predated the execution of the assignments***.

*Id.* at 756 (internal citations omitted) (emphasis added).

>  i.   *The Nature of Atlas's Assignments Do Not Weigh in Favor of
>        Finding Any Collusion*

Defendants argue that the assignments are presumptively collusive because

they provide that the Covered Persons will receive 65% of any judgment recovered

against Defendants. On this fact alone, Defendants mischaracterize Atlas as a simple

collection agent operating under a contingency fee and argue that this is a "textbook

case" where the assignors are recognized as the real party in interest. Opp. at 24-25.

---

[7] Plaintiffs do not concede that the assignments at issue are "partial assignments"
under New Jersey state law and note that Defendants have not offered any applicable
authority to support this characterization of Atlas's assignments. Regardless, under
*Long John Silver*, the retention of some monetary interest by the assignor is not
determinative. 520 F. Supp. 753 at 756.

Defendants' arguments fail under the *Long John Silver* analysis. It is clear that Atlas's assignments—regardless of whether any interest is retained by Covered Persons—are distinguishable from those assignments made for collection purposes only.

*One*, the litigation is paid for and directed by Atlas. Parikh Decl., Ex. A at 91:18-92:23; 194:17-196:12. The Covered Persons retain no control in the litigation strategy of these cases. When an assignee, like Atlas, controls the entire litigation and pay litigation fees, courts are more likely to weigh that factor in favor of finding no collusion. *See, e.g., Long John Silver's*, 520 F. Supp. 753 at 756 ("Collection agents in this context do not assume legal fees and costs and direct litigation.")

*Second*, Atlas held a legitimate independent business interest in this dispute that predates the confirmation of any assignment. Atlas is not in the business of collecting on debts or judgments. It developed an entire business and infrastructure so that people can efficiently submit nondisclosure requests and effectively assert privacy rights through its platform. While Covered Persons can of course seek nondisclosure without Atlas, Atlas provides a streamlined set of services for tackling these disclosure issues on a broader scale. In an ideal world, Covered Persons would use Atlas's platform to enforce their privacy rights without ever having to go to trial. Parikh Decl., Ex. A at 202:3-203:11.

*Third*, the purpose and motivation behind the assignments was to empower Atlas to enforce Daniel's Law and obtain relief on behalf of the Covered Persons, so that they can focus on their jobs protecting people instead of trying to deal with the whack-a-mole mess created by these hundreds of for-profit data brokers. That is exactly what was contemplated with the assignments allowed for under Daniel's Law. The Covered Persons can focus on their work, and Atlas can focus on this litigation, including fees and strategy. Parikh Decl., Ex. A at 166:9-167:11; 203:12-204:15.

*Fourth*, Atlas paid the Covered Persons good and fair consideration for the assignment of their claims in the form of Atlas's services and the use of its platform. In exchange, the Covered Persons assigned to Atlas the right to assert claims against Defendants. They did not simply assign the right to collect a debt or judgment owed from Defendants like in a collections agent relationship. *See Westinghouse Credit Corp. v. Shelton*, 645 F.2d 869, 871 (10th Cir. 1981) (assignments for collection means "recovery on a money debt by litigation"). As such, Atlas has taken on significant business and litigation risk by bringing these lawsuits, including defense of meritless counterclaims asserted by some of the Defendants.

*Finally*, the 65/35 recovery split also makes perfect sense in this situation. Unlike a typical collection agent, Atlas is providing enormous value in these cases in the form of Atlas's substantial services and products, which makes the recovery

split fair and beneficial to Covered Persons. Under the Terms of Service, Atlas receives the 35% purported "contingency fee" (as Defendants call it) regardless of whether a Covered Person pursues individual actions, or Atlas brings the Covered Persons's claims as an assignee. The fact that Atlas receives the same recovery regardless of whether an assignment is effectuated further undermines the absurd notion that Atlas is solely operating as a collection agent. Defendants fail to cite a single example where a so-called collections agent is paid the same amount regardless of whether they are retained to actually collect on someone's behalf.

   *ii.*  *The Timing of the Assignments Do Not Evidence Collusion*

   A short span of time between assigning a claim and filing a complaint is only a relevant factor where it evidences that an assignment was made in a collusive manner to affect the jurisdiction of an anticipated or pending lawsuit. But that is not the case here, where the business relationship between Atlas and the Covered Persons predates any assignment or lawsuit. Covered Persons executed the Terms of Services and benefited from Atlas's services long before any cognizable claim under Daniel's Law accrued. Upon agreeing to the Terms of Services, Covered Persons grant Atlas the option to effectuate an assignment, but there is no claim to be assigned until Defendants fail to comply with a nondisclosure request. Thus, the assignment confirmation dates are merely a function of Defendants' noncompliance and do not demonstrate any collusion.

### iii.     Daniel's Law Expressly Provides for the Assignment of Claims to be Enforced in New Jersey State Court

The facts and circumstances leading up to the series of lawsuits clearly show no manipulation of jurisdiction.  The Atlas assignments are expressly authorized by Daniel's Law as a mechanism to enforce a Covered Person's rights and specifically call for any enforcement action to be filed in New Jersey state court. *See* N.J.S.A § 56:8-166.1(b) ("A person, business, or association that violates [Daniel's Law] shall be liable to the covered person or the ***covered person's assignee***, who may bring a ***civil action in the Superior Court***." (emphasis added). Consistent with the framework of Daniel's Law and the written assignment of litigation rights, Plaintiffs originally filed these cases in New Jersey's *state* courts because they are enforcing a New Jersey *state* statute that was enacted to protect the privacy interests of New Jersey *state* residents. No assignment was made for the purpose of avoiding federal jurisdiction; Atlas and the Covered Persons simply followed the enforcement mechanism prescribed by the statute.

### iv.     Plaintiffs' Counsel Does Not Represent the Covered Persons

Contrary to Defendants' assertion, Plaintiffs' counsel does not represent both the assignors and assignees in these cases. Plaintiffs' counsel, including Morgan & Morgan, PEM Law, and Boies Schiller Flexner, have never represented—let alone contacted—the tens of thousands of Covered Persons who effectuated assignments in these cases. Plaintiffs' counsel only represents the named Individual Plaintiffs and

16

Atlas in this case. Covered Persons were free to use their own counsel when reviewing Atlas's Terms of Service or any time prior to assignment.

With respect to the putative class action in *John Doe-1, et al v. LexisNexis Risk Data Management, LLC, et al.*, Case No. 1:24-cv-4566 ("*LexisNexis* class action"), the putative class members are not represented by anyone at this stage. Regardless, the *LexisNexis* class action does not involve any assignment, does not involve the same claims, nor the same parties—indeed, Atlas is not even a plaintiff in that case. Defendants are hard pressed to show how overlapping counsel between the present case and the *LexisNexis* class action is at all relevant to the jurisdictional analysis. It is not relevant, and it provides no basis to deny this remand motion.

### C. There is No Basis to Find Fraudulent Joinder

Defendants in two of the remand cases assert fraudulent joinder and/or nominal party arguments as a separate basis for invoking federal jurisdiction.[8] The early fraudulent joinder case of *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907), emphasizes the same principles underpinning the Section 1359 analysis. The Supreme Court, stated:

> [T]he Federal courts should not sanction devices intended to prevent the removal to a Federal court where one has that right, and should be

---

[8] *Atlas Data Privacy Corp., et al. v. Thomson Reuters Corp. et al*, No. 1:24-cv-04269, and *Atlas Data Privacy Corp., et al., v. MyHeritage, LTD. et al*, No. 1:24-cv-04392. The Defendants asserting a fraudulent joinder/nominal party argument in these cases will be collectively referred to as the "Fraudulent Joinder Defendants."

equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction.

*Id.*; *see also Carter v. Seaboard Coast Line R. Co*., 318 F. Supp. 368, 373 (D.S.C. 1970) (noting "the criteria for establishing a sham joinder which are equally applicable to cases where the transfer or assignment is to defeat federal jurisdiction."). Thus, the Court should undertake its fraudulent joinder/nominal party analysis with the same considerations in mind as with its collusive assignment analysis.

Courts have been clear in stating that an analysis of fraudulent joinder should not be used to evaluate the merits of a plaintiff's case. "[W]here there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses." *Boyer v. Snap-On Tools, Corp.*, 913 F.2d 108, 113 (3d Cir. 1990). Indeed, those courts finding fraudulent joinder "nearly always [have] done so because the claim was based on a legal impossibility, such as statute of limitations, the absolute litigation privilege, or ripeness." *Curley v. Mercury Ins. Servs., LLC*, No. 21-cv-12259, 2022 WL 445633, at *3 (D.N.J. Feb. 10, 2022). When considering a fraudulent joinder argument, the Third Circuit has cautioned against applying a motion to dismiss-like review to such an argument. *Batoff v. State Farm Ins. Co*., 977 F.2d 848, 852 (3d Cir. 1992) (ruling that "the district court erred in converting its jurisdictional inquiry into a motion to dismiss"

18

where "the court concluded that it could dismiss [a non-diverse defendant] from the action simply because [the plaintiff's] complaint 'fail[ed] to state a valid claim' against him.").

Here, the Fraudulent Joinder Defendants rely on merit-based arguments that go far beyond even a motion to dismiss standard. They ask the Court to accept their carefully-crafted declarations, in which they assert they had no control over the websites publishing Covered Persons' information, as conclusively resolving the issue of liability. They ask this Court to, in essence, conduct not only a motion for judgment on the pleadings analysis to assess the merits of Plaintiffs' claims but also accept at face value their self-serving declarations. The statute calls for broad liability covering many acts of disclosure, i.e, "solicit[ing], sell[ing], manufacture[ing], giv[ing], provid[ing], lend[ing], trad[ing], mail[ing], deliver[ing], transfer[ing], post[ing], publish[ing], distribut[ing], circulat[ing], disseminat[ing], present[ing], exhibit[ing], advertis[ing], or offer[ing]," or otherwise "make[ing] available or viewable within a searchable list or database," a Covered Person's personal information. *See* N.J.S.A. 47:1A-1, *et seq*., N.J.S.A 56:8-166.1 and N.J.S.A. 2C:20-31.1. Defendants suggest a narrow reading of Daniel's Law to limit liability to entities which only "own" or "operate" or "maintain" the website or email address at issue. But that is not the test for liability, and Defendants' narrow reading is contrary to the policy and purpose of Daniel's Law. *See* New Jersey Assembly

Committee Statement, A.B. 1649, Jan. 1, 2021 ("[Daniel's Law's] new protections for judicial officers and prosecutors, . . who under current law are already provided some protections [are] to be expanded by the bill."). Under a reasonable reading of the statute, Plaintiffs' complaint properly alleges liability against the Fraudulent Joinder Defendants regardless of their declared lack of control over the offending websites or email addresses.

These issues of liability should be resolved at a later date, not at this jurisdictional phase of the case.

### D. CAFA is Not Applicable

Federal jurisdiction does not exist under CAFA because (i) courts do not look beyond the real parties in interest—the named Plaintiffs—to determine if the case is brought on behalf of enough people for CAFA removal, and (ii) Daniel's Law is not akin to a class action or a mass action. Defendants' attempt to distinguish controlling Third Circuit and Supreme Court authority is futile.

> i. *Hood Squarely Defeats Defendants' CAFA Mass Action Argument*

Defendants' CAFA mass-action argument strenuously asks this Court to do precisely what the Supreme Court in *Hood* has forbidden this Court from doing: engaging in a background factual inquiry to identify "unnamed real parties in interest" that, if counted, would clear the 100-plaintiff mass-action threshold. *Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 175 (2014). Defendants glaringly

20

ignore the Supreme Court's squarely on point ruling in *Hood* "that Congress did not intend the background inquiry to apply to the mass action provision." *Id.* Although *Hood* involved a *parens patriae* action, nothing in the Supreme Court's opinion suggests that its ruling is limited to *parens patriae*—in fact, subsequent decisions have explicitly extended *Hood*'s holding outside that narrow context. *See, e.g., Liberty Mut. Fire Ins. Co. v. EZ-FLO Int'l, Inc.*, 877 F.3d 1081, 1084 (9th Cir. 2017).

Part III of the Supreme Court's unanimous *Hood* decision stands for the simple proposition that this Court cannot conduct a background inquiry to find jurisdiction under CAFA's mass-action prong. 571 U.S. at 174-76. *Hood* requires this Court to adhere to the plain reading of the statute and count the actual plaintiffs who propose to bring the suit. *Id.* Because that number in all cases before this Court is under 100, this Court does not have jurisdiction under CAFA's mass-action prong.

Defendants' fatal mistake is their repeated assertion that, despite *Hood*'s exceedingly straightforward analysis of the meaning of the word "plaintiff" as it is used in the mass-action rule, the Supreme Court continues to authorize a fact-specific background inquiry to determine whether an action is truly a mass action even if there are fewer than 100 named plaintiffs. The Court in *Hood* specifically tells us that Defendants are wrong. 571 U.S. at 175. Indeed, the entirety of Part III of the unanimous *Hood* decision squarely eviscerates Defendants' argument that this Court has the authority to disregard the pleadings and look to the factual background

21

to find jurisdiction under the mass-action provision. In the simple words of the unanimous Supreme Court in *Hood*, Congress did not authorize this Court to conduct any form of background inquiry to find CAFA jurisdiction under the mass-action prong.

The defect in Defendants' argument is simple. To whatever extent Congress and the federal courts have authorized background inquiries to find subject-matter jurisdiction in other areas of law, such an inquiry is simply and expressly forbidden under CAFA's mass-action prong because Congress did not intend for it to take place. There is no other reasonable reading of the Supreme Court's interpretation of CAFA's mass-action prong in *Hood*. And there is nothing in Part III of *Hood* that is logically limited to *parens patriae* actions. Because the Supreme Court has ruled that Congress has not authorized this Court to conduct a "real party in interest" background inquiry to determine jurisdiction under CAFA's mass-action prong, this Court should reject Defendants' request to conduct such an inquiry. And because there are fewer than 100 plaintiffs who propose to bring each of these actions, this Court cannot find subject-matter jurisdiction under CAFA's mass-action prong.

### ii. *Daniel's Law is Not Equivalent to Rule 23*

Under the Third Circuit's binding decision in *Erie II*, before subject-matter jurisdiction can be extended under CAFA, this Court must first determine whether the New Jersey procedural rule governing Plaintiffs' Daniel's Law claims is similar

to Rule 23. *Erie Insurance Exchange v. Erie Indemnity Co.*, 68 F.4th 815, 820 (3rd Cir. 2023) ("*Erie II*") ("But the primary obstacle preventing *this* case from falling within CAFA's definition of a class action is a quintessentially legal requirement: whether the Pennsylvania procedural rules governing Exchange's claim are similar to Rule 23.") (emphasis in original). Because Defendants must concede that Plaintiffs did not bring this action under New Jersey's Rule 4:32, or any other procedural rule authorizing a class action or imposing class-action requirements similar to Rule 23, they make the absurd argument that Daniel's Law itself is somehow like Rule 23. Daniel's Law is clearly not like Rule 23. It does not authorize any party to assert any claim that is not its own or that has not been specifically assigned to it, and it does not authorize any litigant to bring a claim as a representative for would-be class-members who have not expressly agreed to be bound by the outcome of the litigation.

Daniel's Law "'contains none of the defining characteristics of Rule 23,' such as class certification mechanisms, requirements of numerosity or commonality, or requirements that absent class members be notified of the substance of the lawsuit." *Williams v. Employers Casualty Co.*, 845 F. 3d 891, 899-900 (8th Cir. 2017) (quoting *Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 158–59 (3d Cir. 2013) ("*Erie I*")). In *Erie I*, the Third Circuit listed the various elements necessary for a state rule of procedure to be "like Rule 23," and Daniel's Law does not meet these

elements. Most importantly, the rule must authorize "an action to be brought by a representative as a class action." *Erie I*, 722 F. 3d at 158. Nothing in Daniel's Law authorizes such an action. "A class-action is a *representative* action." *Neale v. Volvo Cars of North America, LLC*, 794 F. 3d 353, 364 (3rd Cir. 2015) (emphasis added) (discussing the history and nature of class actions as a representative actions). By virtue of the representative nature of the action, unnamed members of the class do not necessarily need to meet the essential elements of bringing a claim, such as standing, so long as the representative can meet those elements, and the representative may bind unnamed class members to the outcome of the litigation regardless of whether they have expressly assigned their rights to bring a claim to the representative. *Id.* at 364-65. Critically, nothing in Daniel's Law allows a representative plaintiff to bind members of a would-be class to the results of a litigation. Daniel's Law's assignment provision does not bridge this gap. It authorizes parties like Atlas to litigate only the claims specifically assigned to it. The lack of any authorization in Daniel's Law for a plaintiff to bring a single, representative claim that would bind unnamed members of a class who have not specifically assigned their claims to the would-be representative is the most obvious feature of Daniel's Law bringing it squarely outside the realm of Rule 23.

Defendants nonetheless argue that, by squinting at Daniel's Law, this Court can somehow infer that, in situations like the present actions, Daniel's Law bears

certain features that resemble Rule 23. This is not credible. None of the allegedly similar features are actual legal requirements to bring a Daniel's Law claim. The "like Rule 23" inquiry does not ask if it is possible to construct a litigation that might resemble a class action; the inquiry asks whether the allegedly similar state procedural rule contains "Rule 23's class-related requirements," by, for example, "list[ing] requirements such as numerosity or commonality that a suit must meet to constitute a class action." *Erie I*, 722 F. 3d at 159. Daniel's Law has no such requirements. In Defendants' view, because Atlas as assignee has authority to bring many claims under Daniel's Law by virtue of having been specifically assigned each of those claims, this Court should treat Daniel's Law as having a numerosity requirement. But the fact that Daniel's Law permits an assignee to bring numerous claims does not mean that numerosity is required to bring a claim under Daniel's Law. Any Covered Person or assignee with a single claim may proceed under the law individually. Daniel's Law does not impose procedural rules for fairly litigating claims on behalf of unnamed class members "like Rule 23" because it does not authorize anything resembling a class-action in which a party may litigate claims that have not been expressly assigned to it. Daniel's Law is accordingly not like Rule 23.

Defendants have clearly exhausted every effort to find something in the text of Daniel's Law's that would support their adventurous reasoning that Daniel's Law

is similar to Rule 23, and this Court should note that not one of Defendants' citations to the text of Daniel's Law supports their argument. The lone reference to "class actions" that Defendants have found in Daniel's Law, which they saw fit to emphasize for this Court, provides no support for their theory. *See* Blackbaud Opp.[9] at 24. Defendants cite to N.J.S.A. 47:1B-2(d)(1)-(6) and emphasize its language providing that Covered Persons must affirm in writing that they understand that by seeking non-disclosure of their protected information from New Jersey public agencies, they may affect their ability to be notified of any class action suit or settlement. But this reference to the term "class action" has nothing to do with whether Daniel's Law authorizes class-action litigation. Instead, this provision of Daniel's Law pertains to the important fact that, by seeking non-disclosure of their protected information from public agencies, Covered Persons may adversely affect their ability to receive notices provided through those agencies, such as notices related to New Jersey's Municipal Land Use Law, the nomination of candidates for public office, the sale of property, and class action suits or settlements. *See* N.J.S.A. 47:1B-2(d)(1)-(6). That is, N.J.S.A. 47:1B-2(d) merely informs Covered Persons that by asking public agencies to cease disclosing their information, they may adversely affect their ability to receive notice of events that may affect their rights,

---

[9] Citations to "Blackbaud Opp." refer to the supplemental briefing filed in *Atlas Data Privacy Corp., et al. v. Blackbaud, Inc., et al*, No. 1:24-cv-03993.

including notice of *any* class action suit or settlement. Nothing in this provision, or any provision of Daniel's Law, authorizes a litigation in which one party maintains a representative claim that binds would-be class members who have not specifically assigned their claims to that party. Daniel's Law is clearly not like Rule 23, and this Court should reject Defendants' argument to the contrary.

Finally, Plaintiffs note that both *Williams v. Employers Mutual Casualty Company*, 845 F. 3d 891 (8th Cir. 2017), and *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F. 3d 740 (7th Cir. 2013), on which Defendants rely for the proposition that this Court must conduct a fact-based inquiry to discern whether Plaintiffs have attempted to avoid this Court's jurisdiction by omitting the name of the procedural rule under which they are obligated to proceed, are easily distinguishable. *See* Blackbaud Opp. at 6. In both cases, the plaintiff had authorization to bring suit "only in its capacity as class representative," so the reviewing courts were bound to find that the only way the action could have been brought was under a rule similar to Rule 23 regardless of how the plaintiffs framed their pleadings. *See, e.g.*, *Addison Automatics*, 731 F. 3d at 742.

In *Addison*, the would-be individual plaintiff had previously filed a class-action suit against a company for various claims relating to the defendant company's sending thousands of junk faxes. *Id.* at 741. The defendant company's insurers refused to defend the suit, and the company worked out a settlement with Addison

by which it agreed to an $18 million judgment but would not have to pay a single dime; instead, the defendant company assigned all claims against its insurer to Addison "as class representative." *Id.* "The settlement made clear that Addison's status as assignee depended on its continuing role as class representative." *Id.* Following this settlement, Addison attempted to initiate a new state court action against the insurance company as assignee of the initial defendant company's claims, but Addison described the suit as "an individual declaratory judgment action," and not as a class action. The Seventh Circuit had no trouble finding that, under these facts, Addison's "status as assignee depended on its continuing role as class representative." *Addison*, 731 F. 3d at 741. Therefore, Addison had authority to bring its claim as assignee only as a class representative. Addison's attempt to sue was therefore necessarily a class action in disguise because Addison had the right to sue only in its capacity as a class representative. *Id.* at 742-43.

*Williams* follows the same fact pattern. There, the plaintiff Williams was previously a class representative in a lawsuit against a defendant company for damages related to pollution. *Williams*, 845 F. 3d at 894-95. The defendant company's insurers declined to indemnify it, so it too reached an agreement with Williams to assign its rights to insurance proceeds to Williams "as class representative." *Id.* at 895. Williams then initiated an equitable-garnishment action in state court against the insurers and the defendant company. *Id.* Williams noted

28

that she was bringing the action "as class representative." *Id.* The insurers removed to federal court under CAFA, and Williams sought remand on the ground that the garnishment action was not a class action. *Id.* The district court denied remand and Williams appealed. *Id.* The Eighth Circuit rejected Williams' appeal because "it is clear from the pleadings that Williams can bring this case only because of her status as the representative of the class certified under Rule 52.08, an undisputed analogue of Rule 23." *Id.* at 900.

Neither *Williams* nor *Addison* remotely resembles these cases. Atlas has not been assigned the right to bring any action "as class representative," and Atlas does not seek to avoid the role of class representative because Atlas has never been authorized (or bound) to represent a class in the first place. Atlas brings nothing more than the individual claims assigned to it. As such, this case is not one where a party seeks to avoid CAFA jurisdiction by omitting the procedural rule under which it proceeds. Atlas proceeds only and entirely under Daniel's Law, a state law that is not similar to Rule 23 or any other rule that authorizes a party to litigate a single claim as representative for class members who have not specifically assigned their rights to that party.

Because Daniel's Law is not like Rule 23, and because Defendants have identified no other rule like Rule 23 under which Plaintiffs have brought this action,

this Court should reject Defendants' argument that this Court has jurisdiction under CAFA.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their remand motion in its entirety.

Dated:  October 10, 2024                    Respectfully submitted,

                                            **PEM LAW LLP**

                                    By: s/ *Rajiv D. Parikh*
                                            Rajiv D. Parikh
                                            Kathleen Barnett Einhorn
                                            Jessica A. Merejo
                                            One Boland Drive, Suite 101
                                            West Orange, New Jersey 07052
                                            Tel: (973) 577-5500
                                            rparikh@pemlawfirm.com
                                            keinhorn@pemlawfirm.com
                                            jmerejo@pemlawfirm.com

                                            **BOIES SCHILLER FLEXNER LLP**
                                            Mark Mao (Admitted *pro hac vice*)
                                            44 Montgomery St., 41st Floor
                                            San Francisco, CA 94104
                                            Tel.: (415) 293-6800
                                            mmao@bsfllp.com

Adam R. Shaw (Admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, NY 12207
Tel: (518) 434-0600
ashaw@bsfllp.com

Samantha Parrish (*pro hac vice* to be filed)
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 629-9040
sparrish@bsfllp.com

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis (*pro hac vice* to be filed)
Ryan J. McGee (*pro hac vice* to be filed)
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

*Attorneys for Plaintiffs*