IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BLACKBAUD, INC., et al. | : | NO. 24-3993 |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WHITEPAGES, INC., et al. | : | NO. 24-3998 |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HIYA, INC., et al. | : | NO. 24-4000 |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMERCIAL REAL ESTATE<br>EXCHANGE, INC., et al. | : | NO. 24-4073 |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CARCO GROUP INC., et al. | : | NO. 24-4077 |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TWILIO INC., et al. | : | NO. 24-4095 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| 6SENSE INSIGHTS, INC., et al. | : | NO. 24-4104 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LIGHTBOX PARENT, L.P., et al. | : | NO. 24-4105 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SEARCH QUARRY, LLC, et al. | : | NO. 24-4106 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ACXIOM, LLC, et al. | : | NO. 24-4107 |

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.             :
                                :
         v.                     :
                                :
ENFORMION, LLC, et al.          :            NO. 24-4110
```

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.             :
                                :
         v.                     :
                                :
COSTAR GROUP, INC., et al.      :            NO. 24-4111
```

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.             :
                                :
         v.                     :
                                :
ORACLE INTERNATIONAL            :            NO. 24-4112
CORPORATION, et al.             :
```

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.             :
                                :
         v.                     :
                                :
RED VIOLET, INC., et al.        :            NO. 24-4113
```

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.             :
                                :
         v.                     :
                                :
RE/MAX, LLC, et al.             :            NO. 24-4114
```

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EPSILON DATA MANAGEMENT, LLC,<br>et al. | : | NO. 24-4168 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PEOPLE DATA LABS, INC.,<br>et al. | : | NO. 24-4171 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CLARITAS, LLC, et al. | : | NO. 24-4175 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DATA AXLE, INC., et al. | : | NO. 24-4181 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| REMINE INC., et al. | : | NO. 24-4182 |

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :
LUSHA SYSTEMS, INC, et al.      :           NO. 24-4184
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :
TELTECH SYSTEMS, INC.,          :           NO. 24-4217
et al.                          :
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :
PEOPLECONNECT, INC., et al.     :           NO. 24-4227
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :
CORELOGIC, INC., et al.         :           NO. 24-4230
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :
BLACK KNIGHT TECHNOLOGIES,      :           NO. 24-4233
LLC, et al.                     :
```
_____

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THOMSON REUTERS CORPORATION, et al. | : | NO. 24-4269 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHOREOGRAPH LLC, et al. | : | NO. 24-4271 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TRANSUNION, LLC., et al. | : | NO. 24-4288 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EQUIFAX INC., et al. | : | NO. 24-4298 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| V. | : | |
| | : | |
| SPOKEO, INC, et al. | : | NO. 24-4299 |

ATLAS DATA PRIVACY           :           CIVIL ACTION
CORPORATION, et al.          :
                             :
         v.                  :
                             :
TELNYX LLC, et al.           :           NO. 24-4354

_____

ATLAS DATA PRIVACY           :           CIVIL ACTION
CORPORATION, et al.          :
                             :
         v.                  :
                             :
MYHERITAGE, LTD., et al.     :           NO. 24-4392

_____

ATLAS DATA PRIVACY           :           CIVIL ACTION
CORPORATION, et al.          :
                             :
         v.                  :
                             :
WILAND, INC., et al.         :           NO. 24-4442

_____

ATLAS DATA PRIVACY           :           CIVIL ACTION
CORPORATION, et al.          :
                             :
         v.                  :
                             :
ATDATA, LLC, et al.          :           NO. 24-4447

_____

ATLAS DATA PRIVACY           :           CIVIL ACTION
CORPORATION, et al.          :
                             :
         v.                  :
                             :
PRECISELY HOLDINGS, LLC,     :           NO. 24-4571
et al.                       :

_____

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OUTSIDE INTERACTIVE, INC. | : | NO. 24-4696 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| VALASSIS DIGITAL CORP.,<br>et al. | : | NO. 24-4770 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE LIFETIME VALUE CO. LLC,<br>et al. | : | NO. 24-4850 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FIRST AMERICAN FINANCIAL<br>CORPORATION, et al. | : | NO. 24-5334 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LEXISNEXIS RISK DATA<br>MANAGEMENT, LLC, et al. | : | NO. 24-6160 |

<u>MEMORANDUM</u>

Bartle, J.                                          November  20, 2024

   Plaintiffs  in  these  forty  actions  allege  violations  of  a  New  Jersey  statute  known  as  Daniel's  Law.[1]

   The  actions  were  originally  filed  in  the  Superior  Court  in  a  number  of  different  counties  in  New  Jersey.   The  defendants  thereafter  removed  them  to  the  United  States  District  for  the  District  of  New  Jersey  under  28  U.S.C.  §§  1441  and  1446  on  the  ground  that  subject  matter  jurisdiction  exists  either  under  28  U.S.C.  §  1332(a)  as  a  result  of  complete  diversity  of  citizenship  or  under  the  Class  Action  Fairness  Act  ("CAFA"),  28  U.S.C.  §  1332(d).   Defendants  assert  that  plaintiffs  have  collusively  attempted  to  defeat  federal  jurisdiction.   In  two  of  the  cases,  the  defendants  maintain  that  plaintiffs'  joinder  of  non-diverse  defendants  was  fraudulent.   Before  the  court  is  the  consolidated  motion  of  the  plaintiffs  to  remand  to  the  state  court  under  28  U.S.C.  §  1447(c)  on  the  ground  that  this  court  lacks  subject  matter  jurisdiction.[2]

---

1.    Daniel's  Law  as  amended  is  codified  as  follows:  N.J.  Stat. Ann.  §§  2C:20-31.1,  17:46B-1.1,  19:31-18:1,  46:26A-12,  47:1-17, 47:1A-1.1,  47:1A-5,  47:1B-1,  47:1B-2,  47:1B-3,  47:1B-4,  56:8- 166.1,  56:8-166.3.

2.    All  judges  in  the  District  of  New  Jersey  have  recused.   The Chief  Judge  of  the  United  States  Court  of  Appeals  for  the  Third Circuit  reassigned  these  and  all  related  actions  to  the undersigned  pursuant  to  28  U.S.C.  §  292(b).

Daniel's Law provides that New Jersey judges, prosecutors, law enforcement officers, and their immediate families ("covered persons") may request that persons and businesses ("entities") not disclose or make available their home addresses or unlisted telephone numbers.  See, e.g., N.J. Stat. Ann. § 56:8-166.1(d).  These entities are in violation of Daniel's Law if they fail to take down this information within ten business days after receiving a written takedown request. N.J. Stat. Ann. § 56:8-166.1(a).  Daniel's Law provides a private right of action for damages and injunctive relief not only for covered persons but also for their assignees.  N.J. Stat. Ann. § 56:8-166.1(b)-(c).  Under Daniel's Law, "'assignee' means a person or entity to whom or which an authorized person has assigned, in writing, a covered person's right to bring a civil action for" Daniel's Law violations.  N.J. Stat. Ann. § 56:8-166.1(d).

Plaintiffs in all of the actions are Atlas Data Privacy Corporation ("Atlas"), Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan.  Atlas, a Delaware corporation with its principal place of business in New Jersey, has filed suit as the assignee of the Daniel's Law claims of over 19,000 New Jersey covered persons.  The named individual plaintiffs, all current or former law enforcement officers, are

also citizens of New Jersey.  They have brought their own claims for violations of Daniel's Law.  In each of these forty cases, there is a named defendant which, like Atlas, is a citizen of Delaware.

Upon the filing of the motions to remand, the court authorized limited discovery on the issue of subject matter jurisdiction.  E.g., Order, Atlas Data Privacy Corp. v. Blackbaud, Inc., Civil Action No. 24-3993, (D.N.J. July 24, 2024), ECF No. 53.

I

Atlas provides a range of services for persons covered under Daniel's Law who sign up for Atlas's platform ("users").  Before a Daniel's Law claim ever arises, Atlas monitors the internet for data brokers who are potentially disclosing the users' home addresses and unlisted telephone numbers.  Atlas then identifies those data brokers for its users.  Additionally, Atlas provides each user with an individual e-mail address, from which the user may request that the data brokers remove his or her personal information.  To do so, users may send either the form e-mail that Atlas provides or their own personalized e-mail.  Atlas then schedules the delivery dates of the takedown notices.  After takedown notices are sent, Atlas continues to monitor the recipients to see if they have complied with the requests.

Upon signing up for Atlas's platform, users agree to Atlas's terms of service ("the terms").  In so doing, users agree that "upon written notice from Atlas," the users assign their "right to bring civil enforcement actions for violations of [their] rights under" Daniel's Law.  The terms further state that, upon receipt of this written notice, a user is "deemed . . . to have irrevocably assigned to [Atlas] all of [the user's] rights to bring a claim (and seek damages, other legal remedies, and fees, costs, and litigation expenses) for violations of [the user's] rights under" Daniel's law, and "following such assignment, [Atlas] will have the exclusive right to bring such civil enforcement actions . . . ."

Atlas has discretion whether to take an assignment. Atlas may choose to send an assignment confirmation and litigate the Daniel's Law claim itself, or it may choose not to send a confirmation, in which case the users may litigate their own claims.  In either case, the terms provide that Atlas will keep 35% of any recovery from the action with the user receiving the remaining 65%.  Users also pay a subscription fee, whether or not a Daniel's Law claim arises.

In early February 2024, following an alleged failure of the defendants to comply with users' takedown requests, Atlas sent assignment confirmations to over 19,000 of its users.

Shortly thereafter, it filed lawsuits on these assigned claims in the state court.

## II

Plaintiffs first contend that remand is required because complete diversity of citizenship has not been satisfied under 28 U.S.C. § 1332(a). The statute requires that the citizenship of each plaintiff must be different from the citizenship of each defendant.[3] Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553-54 (2005); see also Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806). A corporation is deemed a citizen of both its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c). A limited liability company ("LLC") takes on the citizenship of each of its members. See Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010).

It is undisputed that Atlas is a citizen of Delaware, as is at least one defendant in all these cases. Thus, at first glance, it appears that complete diversity is absent under § 1332(a).

The defendants, as the party asserting jurisdiction, bear the burden of establishing that federal jurisdiction exists. Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392,

---

3. Defendants do not dispute that plaintiffs have satisfied the required amounts in controversy under § 1332(a).

396 (3d Cir. 2004).  All doubts must be resolved in favor of remand.  Id. at 403.

The defendants first maintain that diversity jurisdiction is lacking because Atlas as an assignee is not a real party in interest and accordingly its citizenship should be disregarded.  The real parties in interest, defendants contend, are the users as assignors.  If defendants are correct, there will be complete diversity since the assignors as well as the individual named plaintiffs are all citizens of New Jersey while no defendant is a citizen of this state.

Rule 17(a) of the Federal Rules of Civil Procedure requires an action to be prosecuted in the name of the real party in interest.  Fed. R. Civ. P. 17(a).  The citizenship of the real party in interest, rather than that of mere nominal parties, governs whether diversity jurisdiction exists.  See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460 (1980).  As explained in Cranpark, Inc. v. Rogers Grp., Inc., "the real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law."  821 F.3d 723, 730 (6th Cir. 2016) (quoting Certain Interested Underwriters at Lloyd's London, Eng. v. Layne, 26 F.3d 39, 42-43 (6th Cir. 1994); see also Katzovicz v. HIH Logistics, Inc., No. 21-4535, 2021 WL 3038816, at *2 (D.N.J. July 19, 2021).

The plaintiffs rely on the Supreme Court's decision in
Sprint Communications Co., L.P. v. APCC Services Inc., 554 U.S.
269 (2008) to support their position that this court should look
to the citizenship of Atlas as the real party in interest.  In
Sprint, roughly 1,400 payphone operators assigned the entirety
of their small claims against long-distance communications
carriers to "aggregators," which then brought suit in their own
names under the federal Communications Act of 1934 to collect
what was due.  Sprint, 554 U.S. at 271-72.  In the assignments,
the operators transferred to the aggregators the legal title to
their claims.  Id. at 272.  In a separate agreement, the
aggregators promised to remit all proceeds recovered to the
assignor-operators, which would in turn pay a service fee to the
aggregators.  Id.  The Court observed:

> Because litigation is expensive, because the
> evidentiary demands of a single suit are often great,
> and because the resulting monetary recovery is often
> small, many payphone operators assign their . . .
> claims to billing and collection firms called
> 'aggregators' so that, in effect, these aggregators
> can bring suit on their behalf.

Id. at 271-72.

The defendants there argued that only the assignors
had standing to sue.  Id. at 274.  The Supreme Court disagreed.
The Court reiterated the well-established standard for standing:
(1) there must be an injury in fact, that is a concrete and
particularized invasion of a legally protected interest; (2)

there must be causation, that is a fairly traceable causation between the injury in fact and the conduct of defendant; and (3) it is likely that plaintiff's injury will be remedied by the relief plaintiff seeks.  Id. at 273.  The Court held that the aggregators, as the absolute assignees of the claims, had standing under these criteria and could bring suit in the federal court in their own names.  Id. at 285.

It makes no difference, the Court noted, what the assignees do with the money after a victory in court or after settlement.  Id. at 279-81.  For purposes of standing, it does not matter whether the assignees remit the money to the operators, donate it to charity, or build a new corporate headquarters.  Even if the assignees return all of the money to the assignors, the assignees are no different than trustees, guardians, executors, or bankruptcy receivers who seek relief not for themselves but for others.  See id. at 287-88.

The defendants here attempt to distinguish Sprint on the ground that it was a federal question case and that the Supreme Court ruled only on the issue of standing.  The specific question, defendants argue, is whether there is diversity jurisdiction and whether Atlas is a real party in interest.

The Supreme Court in deciding the issue of standing in Sprint relied on Waite v. City of Santa Cruz, 184 U.S. 302 (1902), one of its own precedents and a diversity case.  That

case explained that assignments do not defeat jurisdiction "if the only objection to the jurisdiction of the Circuit Court is that the . . . [assignee] was invested with legal title to the bonds and coupons simply for purposes of collection."[4]  Sprint, 554 U.S. at 283 (quoting Waite, 184 U.S. at 325).

The Supreme Court in Sprint also surveyed the history of state court cases allowing assignees to sue in their own names.  It stated: "During [the 19th] century American law at the state level became less formalistic through its merger of law and equity, through statutes more generously permitting an assignor to pass legal title to an assignee, and through the adoption of rules that permitted any 'real party in interest' to bring suit."  Id. at 279 (emphasis added).  The Court took the trouble to list in an Appendix those state cases which allow assignees to sue.  See id. at 292-93.  It pointed out that some specifically referred to the assignee as a real party in interest.  See, e.g., Allen v. Brown, 44 N.Y. 228, 231, 234 (1870); Jackson v. Hamm, 23 P. 88, 88-89 (Colo. 1890); McDaniel v. Pressler, 29 P. 209, 210 (Wash. 1892); Cox's Ex'rs v.

_____

4.   The Supreme Court in Waite ultimately held there was no subject matter jurisdiction because the amount in controversy had not been satisfied by the individual assignments.  184 U.S. at 328-29.  All parties agree that the requisite amounts in controversy in the pending cases here have been met under 28 U.S.C. § 1332(a).

Crockett & Co., 22 S.E. 840, 843 (Va. 1895); Chase v. Dodge, 86
N.W. 548, 549 (Wis. 1901).  The Supreme Court found this history
and these precedents among others to be "well nigh conclusive."
Sprint, 554 U.S at 285 (quoting Vt. Agency of Nat. Res. v.
United States ex. rel. Stevens, 529 U.S. 705, 777-78 (2000).[5]

The Supreme Court treated standing to sue and the real
party in interest as synonymous, at least in the present
context.  See id. at 279-85.  As in Sprint, Atlas has an
absolute assignment of the rights of 19,000 of Atlas's users.
As in Sprint, the assignments of Daniel's Law claims will
facilitate the vindication of the rights originally possessed by
the assignors.  Under the terms of service and upon receipt of
Atlas's assignment confirmations, Atlas was "irrevocably
assigned" the users' rights to "bring a claim []and seek damages
[or] other legal remedies" and has "the exclusive right to bring
. . . civil enforcement actions."  While Atlas intends to return
to the assignors much but not all of what it collects, it does
not matter for jurisdictional purposes what Atlas does with the
money once it is collected.

Atlas, as the assignee, is the real party in interest
and has standing to sue.  Its citizenship, not that of the

---

5.   The Court noted at the end of its opinion in Sprint that
none of the parties had alleged that the assignments were made
in bad faith.  The Court also noted that the assignments were
made "for ordinary business purposes."  554 U.S. at 292.

assignors, is determinative.  Because Atlas is a citizen of
Delaware, complete diversity of citizenship under § 1332(a) is
lacking in all these cases absent proof of collusion to destroy
diversity or proof of fraudulent joinder.

III

Defendants argue that even if Atlas is a real party in
interest, the assignments and the joinder of Atlas as a
plaintiff were collusive.  If so, diversity of citizenship
exists under 28 U.S.C. § 1332(a).

As background, the court begins with 28 U.S.C. § 1359,
which provides that "[a] district court shall not have
jurisdiction of a civil action in which any party, by assignment
or otherwise, has been improperly or collusively made or joined
to invoke the jurisdiction of such court."  The Supreme Court in
Kramer v. Caribbean Mills, Ltd., 394 U.S. 823 (1969) faced the
question whether an assignment was collusive under § 1359.  The
inquiry is a factual one.  In Kramer, a single Panamanian
corporation assigned its contract claim against a Haitian
corporation to a Texas attorney.  394 U.S. at 824.  The
attorney, who had a "total lack of previous connection with the
matter," paid only $1 as consideration for the assignment and
agreed to remit 95% of any recovery back to the Panamanian
corporation.  Id. at 824, 827.  Without the assignment, there

would be no diversity jurisdiction since both corporations were foreign entities.  See 28 U.S.C. § 1332(a).

The issue of collusion, the Court explained, is a matter of federal law as collusion affects subject matter jurisdiction.  The legality of the assignment under state law is not a relevant consideration for this purpose.  Kramer, 394 U.S. at 829.  The Court found that the assignment was improperly or collusively made within the meaning of § 1359 and as a result, diversity jurisdiction was not made out.  Id. at 828, 830.  It grounded its decision on the assignee's lack of prior connection to the matter, his lack of substantial interest in the litigation, and his candid admission that the assignment was "in substantial part motivated by a desire" to create diversity jurisdiction.  Id. at 827-28.

Here, the situation is the reverse of what the Supreme Court dealt with in Kramer.  The defendants contend that Atlas was collusively joined not to get into federal court but to stay out of federal court.  No statute has been cited which deals with efforts to avoid federal jurisdiction.  Nonetheless, taking their cue from § 1359 and Kramer, courts have treated diversity-destroying assignments and diversity-creating assignments similarly for jurisdictional purposes.  See, e.g., Grassi v. Ciba-Geigy, Ltd., 894 F.2d 181, 186 (5th Cir. 1990); Att'ys Trust v. Videotape Comput. Prods., Inc., 93 F.3d 593, 597-98

(9th Cir. 1996); <u>Gentle v. Lamb-Weston, Inc.</u>, 302 F. Supp. 161, 164-65 (D. Me. 1969).

The Fifth Circuit in <u>Grassi v. Ciba-Geigy, Ltd.</u>, for example, held that a plaintiff was collusively joined to avoid federal jurisdiction. 894 F.2d at 186. There, a Texas family had filed a collection action in state court against a Swiss corporation. <u>Id.</u> at 182. On the same day, the family also assigned 2% of its interest in the claim to a Costa-Rican corporation, which had previously had no involvement in the matter. <u>Id.</u> The Costa Rican corporation provided only "investigative and collection work" as consideration for the assignment, and the family controlled the litigation throughout. <u>Id.</u> Although the addition of the Costa Rican corporation would destroy complete diversity,[6] the Swiss corporation nevertheless removed the case to federal court on the ground that the joinder of the Costa Rican corporation was collusive. <u>Id.</u> The Court of Appeals agreed. It found that the "overriding motive" behind the assignment was a desire to prevent federal diversity jurisdiction and accordingly refused to remand the action to state court. <u>Id.</u> at 186. As evidence for its finding, the court pointed to the assignee's lack of prior connection to the

_____

6.   In the Fifth Circuit, "there is no diversity where there are foreign parties on both sides" absent collusion. <u>Grassi</u>, 894 F.2d at 182.

matter, the lack of meaningful consideration, its minimal 2% interest in the litigation, and the family-assignor's control of the litigation.  Id.[7]

As noted, whether a party is collusively joined either to evoke or destroy federal diversity jurisdiction is a question of fact for the court.  While the cases consider various factors as an aid in making this decision, the court must ultimately decide based on the particular facts before it the underlying motive or purpose for the joinder or the assignments.  In sum, the court must ascertain what was really going on.

The facts and circumstances in the pending cases are quite different from those in any other case called to the court's attention.  At the outset, the New Jersey Legislature authorized the assignment of claims to aid in the enforcement of Daniel's Law.  As counsel readily admitted at oral argument, it is highly unlikely that even a single member of the General Assembly or the Senate of New Jersey had in mind the avoidance of federal diversity jurisdiction when the votes were cast to

---

7.   Defendants urge the court to consider Attorneys Trust v. Videotape Computer Products, Inc. because that case lists motive as only one factor in assessing diversity-destroying assignments.  93 F.3d 593, 597 (9th Cir. 1996).  That case involved unusual circumstances, in which the assignees brought suit in federal court in the first instance and then challenged jurisdiction only after an adverse judgment was entered.  Id. at 594.  In any event, Attorneys Trust predates Sprint, and it is not controlling here.

approve assignments.  Nor is there any evidence that Atlas or its users in making the assignments had in mind a desire to gain an advantage by having the assigned claims tried in the Superior Court of New Jersey rather than in the United States District Court for the District of New Jersey.

Defendants argue that Atlas and the Union representing police officers in New Jersey colluded to avoid federal diversity jurisdiction.  While there is evidence that the New Jersey State Policemen's Benevolent Association representing some 33,000 active law enforcement officers did work with Atlas to create assignments from its members, there is no evidence that the question of federal subject matter jurisdiction played any role.

In addition, the assignments here are not being made with respect to a single action or to a limited number of actions where the assignee has a small monetary interest in the outcome.  The assignments to Atlas are absolute.  Atlas controls the litigation.  It has a significant stake in the outcome and will retain for itself 35% of what it collects.  Furthermore, there are thousands of assignments and dozens of defendants. Although Atlas is a citizen of Delaware and New Jersey, it cannot avoid removal to federal court of any of its many lawsuits where the defendants are citizens of other states.  In fact, this court has before it approximately three dozen other

actions originally filed by Atlas as assignee under Daniel's Law in the state court where the defendants are not citizens of Delaware or New Jersey and thus complete diversity exists.  They have been removed and no remand motions are pending.  It is not reasonable to infer that Atlas or its users were engaged in collusive assignments or joinder when there are so many diverse defendants which possess information protected under Daniel's Law.

Defendants in support of their collusion argument point to the short timeframe between the assignment of claims and the filing of the lawsuits.  This factor is of no consequence here.  The amendment to Daniel's Law allowing assignments was enacted on July 20, 2023.  See 2023 N.J. Laws ch. 113.  Atlas and covered persons promptly took advantage of the amendment as was their right once alleged violations of Daniel's Law had occurred.  Atlas obtained absolute assignments and stood fully in the shoes of the assignors.  In return for consideration, the assignors no longer had any claims under Daniel's Law.  Atlas succeeded to the assignors' rights to bring civil actions.  See N.J. Stat. Ann. § 56:8-166.1(d).  Atlas, as any claimant would, then filed lawsuits sooner rather than later.  It was the decision of Atlas, not that of the assignors.  That Atlas and its users moved swiftly to effect the assignments

and Atlas then speedily sued does not create an inference that collusion to avoid federal jurisdiction was afoot.

There are sound legal and business reasons unrelated to federal diversity jurisdiction for the assignments in question and for the joinder of Atlas as a plaintiff.  The court finds there was good faith and no collusion or improper motive or purpose.  Accordingly, defendants have not established the existence of diversity of citizenship under 28 U.S.C. § 1332(a) based on collusion of Atlas, its assignors, or anyone else.

IV

Defendants in two of these forty actions filed notices of removal from the Superior Court of New Jersey on the additional ground that plaintiffs fraudulently joined non-diverse defendants whose presence would destroy complete diversity of citizenship between plaintiffs and the remaining defendants.

The first action is Atlas Data Privacy Corp. v. Thomson Reuters Corp., Civil Action No. 24-4269 (D.N.J. filed Mar. 27, 2024).  There the named defendants are Thomson Reuters Corporation, Thomson Reuters Holdings Inc. ("Holdings"), Thomas Reuters Canada Limited, and Thomson Reuters Applications Inc. ("Applications").  Plaintiff Atlas, a corporation, is a citizen of both Delaware and New Jersey.  The defendants Thomson Reuters Corporation and Thomson Reuters Canada Limited have citizenship

which is diverse from all named plaintiffs.  However, Holdings is a citizen of Delaware and New York, and Applications is a citizen of Delaware and Minnesota.  The citizenship of these two defendants destroys subject matter jurisdiction under 28 U.S.C. § 1332(a) unless they are improperly joined.

The complaint describes Holdings and Applications in the same way as entities which disclose or redisclose on the internet or otherwise make available the home addresses and/or unpublished home telephone numbers of covered persons.  See Compl. ¶¶ 39, 40.  The complaint thereafter alleges that "Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  Those websites include: thomsonreuters.com."  See Compl. ¶ 42.

Accompanying the notice of removal was a Declaration of Heather O'Hagan, the "Head of Tax, Canada & LatAm at Thomson Reuters."  She makes the declaration on the "personal knowledge of Thomson Reuters Corporation, and its subsidiaries, as well as [her] review of Thomson Reuters business records and the Complaint in this case."  In her declaration, she simply states that the website "thomsonreuters.com" is "not owned by or registered to [Holdings] or [Applications]."

The second action is <u>Atlas Data Privacy Corp. v.</u>
<u>MyHeritage Ltd.</u>, Civil Action No. 24-4392 (D.N.J. filed Mar. 28,
2024).  There the named defendants are MyHeritage Ltd. and
MyHeritage (USA), Inc.  MyHeritage Ltd. is incorporated and has
its principal place of business in Israel.  MyHeritage (USA),
like plaintiff Atlas, is incorporated in Delaware.  If
MyHeritage (USA) is a proper defendant, complete diversity is
absent.  The complaint avers identical claims against both
defendants.  Each is characterized as "an entity that discloses
or re-discloses on the Internet or otherwise makes available the
home addresses and/or unpublished home telephone numbers of
covered persons."  <u>See</u> Compl. ¶¶ 36, 37.  The complaint further
alleges: "Defendants offer and engage in the disclosure of data
and information through one or more websites or applications, or
otherwise in New Jersey, and to businesses and individuals who
operate or reside in New Jersey.  Those websites include:
myheritage.com."  <u>See</u> Compl. ¶ 39.

In the <u>MyHeritage</u> action, Michael Stangel, the General
Manager for MyHeritage (USA), filed a declaration based on his
personal knowledge and his review and knowledge of the business
records of MyHeritage (USA).  The declaration states that
MyHeritage (USA) does not "own, control, or otherwise operate
www.myheritage.com" and does not have access to its e-mail
inbox.  It does not have a role in deciding what information is

available on www.myheritage.com and cannot remove any
information on that website.  It does not have access to or
otherwise interact with www.myheritage.com.  MyHeritage (USA)
has its own website, www.geni.com, which is not referenced in
the complaint.

Our Court of Appeals in Batoff v. State Farm Insurance
Co., has explained that joinder is fraudulent "where there is no
reasonable basis in fact or colorable ground supporting the
claim against the joined defendant, or no real intention in good
faith to prosecute the action against the defendant[] or seek a
joint judgment" 977 F.2d 848, 851 (3d Cir. 1992)(quoting Boyer
v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)).  The
court must not treat the issue of fraudulent joinder as it would
a motion to dismiss for failure to state a claim under Rule
12(b)(6) of the Federal Rules of Civil Procedure.  Whether a
plaintiff's claim against a defendant lacks merit as a matter of
law is not the relevant consideration.  Instead, the issue is
whether the claim is "wholly insubstantial and frivolous."
Batoff, 977 F.2d at 852.  The heavy burden of persuasion rests
on the party asserting fraudulent joinder.  Id. at 851.

The court must accept all well-pleaded facts as true.
Id. at 851-52.  Nonetheless, it may venture outside the four
corners of the pleading, not to decide the case on the merits,
but to determine if fraudulent joinder exists.  In Abels v.

State Farm Fire & Casualty Co., our Court of Appeals explained
that a court "must look beyond the face of the complaint for
indicia of fraudulent joinder."  770 F.2d 26, 29 (1985).
Likewise, in Boyer v. Snap-On Tools Corp., the Court cited with
approval Smoot v. Chicago, Rock Island & Pacific Railroad Co.,
378 F.2d 879 (10th Cir. 1967).  Boyer, 913 F.2d at 112.  In
Smoot, the court looked beyond the complaint and accepted an
affidavit of a non-diverse defendant alleged to have been a
railroad employee culpable for a fatal accident at a railroad
crossing.  378 F.2d at 882.  The affidavit declared he had
discontinued his employment with the railroad fifteen months
before the accident.  Id. at 881.  Smoot held that he had been
fraudulently joined.  Id. at 882.

        More recently, our Court of Appeals in In Re Briscoe
reaffirmed the principle that a court may look beyond the
pleading to decide the issue of fraudulent joinder.  448 F.3d
201, 219 (3d Cir. 2006).  There the specific issue was whether
the statute of limitations had run.  The court opined, "we see
no reason to preclude a district court from a limited
consideration of reliable evidence that the defendant may
proffer to support the removal."  Id. at 220.

        In the Reuters action, the declaration is quite
narrow.  It merely states that the website thomsonreuters.com is
not "owned or registered" to Holdings or Applications.  This is

a far cry from total disassociation from that website.  The party asserting fraudulent joinder, as noted above, has the burden of proof.  After review of the allegations in the complaint and the relevant facts presented outside the complaint, defendants Holdings and Applications have not met their burden.  Their position that they were fraudulently joined in Civil Action No. 24-4269 fails.  Thus, subject matter jurisdiction under § 1332(a) is lacking as Holdings and Applications, like Atlas, are citizens of Delaware.

The situation is far different in MyHeritage.  In contrast to the declaration in Reuters, the declaration in MyHeritage is all-encompassing.  It states that MyHeritage (USA) does not own, control, or otherwise operate www.myheritage.com, the website referenced in the complaint.  MyHeritage (USA) has no role in deciding what information is available on that website and has no ability to remove information.  Plaintiffs had the opportunity to take relevant discovery on subject matter jurisdiction pursuant to court order but did not do so on the issue of fraudulent joinder.  See Order, Atlas Data Privacy Corp. v. MyHeritage LTD, Civil Action No. 24-4392 (D.N.J. July 24, 2024), ECF No. 34.  The declaration stands uncontested.

The undisputed facts before the court establish that plaintiffs have no colorable claim against MyHeritage (USA).  The claim is wholly unsubstantiated and frivolous.  MyHeritage

(USA) has no involvement whatsoever with the website in issue. It is a total stranger to any alleged violation of Daniel's Law. The situation here is quite similar to that in Smoot, where the non-diverse defendant was no longer employed by the railroad at the time of the accident and therefore could not possibly have been found liable.

MyHeritage (USA) has established that it was fraudulently joined and will be dismissed.  There is complete diversity under 28 U.S.C. § 1332(a) in Civil Action No. 24-4392.

V

Defendants urge that the jurisdictional requirements have been met for a class action under the Class Action Fairness Act, ("CAFA") 28 U.S.C. § 1332(d)(1)-(10).  In contrast to § 1332(a) but consistent with Article III of the Constitution, CAFA requires only minimal diversity.  See 28 U.S.C. § 1332(d)(2); State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 531 (1967).  This element is satisfied, as it is here, if any member of the class is a citizen of a state different from any defendant.  For CAFA class action status, there must also be a total amount in controversy in excess of $5,000,000. No party raises a challenge on this basis.

The only contested issue is whether these actions meet the definition of a "class action" under § 1332(d)(1)(B).  Under this subsection, "the term 'class action' means any civil action

filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Defendants contend that these actions are "class actions in disguise" or "alternatively that they were filed under Daniel's Law which is similar to Rule 23 in every relevant respect."

First, these are not class actions in disguise. It is pellucid that none of them was brought either explicitly, implicitly, or obliquely under Rule 4:32-1 of the New Jersey Rules of Court, which contains the requirements for maintaining a class action. The New Jersey Rule is in all material respect similar to Rule 23. Nowhere do the plaintiffs in the words of the Rule or otherwise purport to "sue or be sued as representative parties on behalf of" any other persons. See N.J. Ct. R. 4:32-1(a). Plaintiffs are acting on behalf of themselves. As noted, the assignments that Atlas has obtained from its users are absolute. Atlas was "irrevocably assigned" the users' rights "to bring a claim []and seek damages [or] other legal remedies" and has "the exclusive right to bring such civil enforcement actions." Under Daniel's Law, an assignee is a person or entity who has been assigned the covered person's right to bring a civil action. See N.J. Stat. Ann. § 56:18-166.1(d). As explained in Sprint, what Atlas as the assignee

does with what it may collect is of no concern to the court in
these actions.  Sprint, 554 U.S. at 279-81.  In a class action,
of course, it is of great concern what happens to what the class
representative obtains on behalf of the class.  The court in
such actions must review the adequacy of any settlement and take
steps to ensure the proper distribution of any judgment or
settlement.  These actions as pleaded here bear no resemblance
to a class action under Rule 4:32-1 of the New Jersey Rules of
Court.

Defendants argue in the alternative that Daniel's Law
is a statute similar to Rule 23.  This argument seems a little
like trying to fit a round peg into a square hole.  To begin,
there is no representative party provision.  Under Daniel's Law,
covered persons or assignees sue in their own names and not on
behalf of anyone else.  Daniel's Law treats an absolute assignee
such as Atlas as a real party in interest.  The claims of Atlas
belong to Atlas and Atlas alone.  Assignees are not acting on
behalf of the assignors.

Moreover, Daniel's Law contains no numerosity
threshold.  This is a sine qua non for class actions of all
stripes.  Daniel's Law clearly permits a lawsuit by a single
covered person or by an assignee of a single covered person.

The court need not make a detailed comparison between
Daniel's Law and the other characteristics for a class action

such as commonality, typically, adequacy, and notice.  In short, Daniel's Law contains no such provisions.  Defendants' entire argument rests on the premise that the assignments were partial and consequently Atlas is representing the interests of assignors in these lawsuits.  This is simply incorrect.  As explained previously, these assignments are absolute and Atlas succeeds absolutely to the rights of the covered persons to bring suit.

Our Court of Appeals addressed the class action provision of CAFA in Erie Insurance Exchange v. Erie Indemnity Co., 722 F.3d 154 (3d Cir. 2013) and Erie Insurance Exchange by Stephenson v. Erie Indemnity Co., 68 F.4th 815 (3d Cir. 2023) ("Erie Insurance I" and "Erie Insurance II").  An unincorporated insurance exchange brought suit in its own name for breach of fiduciary duty, purporting to seek relief "on behalf of its members."  Erie Insurance I, 722 F.3d at 157.  The exchange brought its suit pursuant to two Pennsylvania procedural rules, both of which addressed primarily whether the exchange could bring its suit under its own name or under the name of its members.  Erie Insurance II, 68 F.4th at 818; see also Pa. R.R. Civ. P. 2152, 2177.

The court rejected the defendant's position that the case was "in substance a class action insofar as [the exchange was] a stand-in for a class of" its members because the state

procedural rules under which the actions were brought "contain[ed] none of the defining characteristics of Rule 23." Erie Insurance I, 722 F.3d at 158-59.  The court noted that the rules contained no class certification mechanisms as in Rule 23(c)(1), no numerosity or commonality requirements as in Rule 23(a)-(b), no provisions addressing notice that must be given to "class members" as in Rule 23(c)(2), or any provisions for opting out or appointing a class representative.  Id. at 159.

The circumstances here are similar to the circumstances in both Erie cases.  Again, these forty actions bear no similarity to class actions under CAFA.

Accordingly, this court does not have subject matter jurisdiction under the class action provisions of CAFA, 28 U.S.C. § 1332(d)(1)-(10).

VI

Finally, defendants assert that subject matter jurisdiction exists, regardless of the citizenship of Atlas, under the "mass action" provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d)(11).  As with a CAFA class action, only minimal diversity is required.  Jurisdiction exists if any plaintiff has different citizenship from any defendant.  It is undisputed that minimal diversity is satisfied in all pending cases.

A mass action is a civil action "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that plaintiffs' claims involve common questions of law or fact. . . ."  28 U.S.C. § 1332(d)(11)(B)(i). The aggregate amount in controversy must be at least $5,000,000, and the claims of each plaintiff must exceed $75,000 exclusive of interest and costs.  Id.  The parties are in accord that the requisite amounts in controversy have been satisfied.  Instead, plaintiffs contend that mass action status fails because there are not 100 named plaintiffs in any of the complaints.  Only Atlas and the six individuals are listed.

The plaintiffs cite the decision of the Supreme Court in Mississippi ex rel. Hood v. AU Optronics Corp., 571 U.S. 161 (2014) as controlling.  In Hood, the State of Mississippi brought an action in the state court in which it claimed that defendants, manufacturers and sellers of liquid crystal display panels, had formed a cartel to restrict competition and raise prices.  571 U.S. at 166.  The State, the only named plaintiff, sought restitution and injunctive relief on behalf of itself and its citizens based on injuries they all suffered as purchasers. Id.  The citizens who were harmed were not named in the complaint.

The defendants removed the action to the federal court on the ground that it was either a class action or mass action

under CAFA.  Id. at 166.  The Supreme Court had before it the question whether a mass action included lawsuits "brought by fewer than 100 named plaintiffs." Id. 168-69.  The Court held unanimously that a mass action cannot exist with fewer than 100 named plaintiffs even if there were 100 or more unnamed persons who were real parties in interest as beneficiaries.  Id. at 175. The Court reached its conclusion based solely on its construction of CAFA.  It reasoned that CAFA explicitly requires "100 or more persons" in a mass action, not "100 or more named or unnamed real parties in interest." Id. at 169.  The Supreme Court read "100 or more persons" to mean 100 or more plaintiffs. See id. at 176.  A plaintiff is a party who brings a civil suit. Id. at 162.

        The Court referenced that CAFA provides that the term "class members" means "the persons (named and unnamed) who fall within the definition of the proposed or certified class." Id. at 169; see also 28 U.S.C. § 1332(d)(1)(D).  In contrast, there is no reference to unnamed persons in a mass action.  The Court observed that if Congress had wanted to include unnamed persons in the calculus, it knows how to say so.  Hood, 571 U.S. at 169. The Court also rejected a real party in interest analysis. While relevant in other contexts, it is not germane to deciding whether a lawsuit constitutes a mass action.  Id. at 174, 176.

The defendants here emphasize that <u>Hood</u> was a <u>parens patriae</u> action where it was not possible to determine the identity of the citizens of Mississippi who were harmed.  They argue that the pending cases under Daniel's Law are different because the 19,000 unnamed covered persons are actually known.  Defendants point to a part of the Supreme Court's opinion which discusses how difficult it would be in that case to identify "a majority of plaintiffs" to meet the requirements for the transfer of the action to another court under § 1332(d)(11)(C)(i) if they were not named in the complaint.  <u>See</u> <u>id.</u> at 173.  This problem, defendants contend, does not exist here.  While the Supreme Court does talk about the problem of applying the transfer provision if unknown citizens of Mississippi are deemed plaintiffs, its discussion of this subject is not critical to its holding.  It simply refers to this difficulty as <u>reinforcing</u> – not as essential to – its construction of the mass action provision of CAFA.  <u>See</u> <u>id.</u>

Even if the 19,000 unnamed covered persons are real parties in interest, this fact does not satisfy the criteria for a mass action under CAFA.  Nor is the difference between a <u>parens patriae</u> action in <u>Hood</u> and the claims here relevant.  There is nothing in CAFA providing that the number of named plaintiffs may vary depending on the nature of the underlying claims.  The defendants urge this court to construe CAFA

broadly.  No policy concern or rule of construction, however,
can undermine the text of the statute as construed by the
Supreme Court.  See Erie Ins. Exch. by Stephenson v. Erie Indem.
Co., 68 F.4th 815, 821 (3d Cir. 2023).  The fact that Congress
loosened the complete diversity requirement for class actions
and mass actions does not mean that other requirements imposed
by Congress should be ignored.

In sum, Hood holds that CAFA requires at least 100
named plaintiffs for any mass action, not simply 100 or more
persons who are real parties in interest.  The Supreme Court
could not have been clearer.  Since there are not a hundred
named plaintiffs in any of the complaints, defendants' argument
that subject matter jurisdiction exists because these lawsuits
are mass actions under 28 U.S.C. § 1332(d)(11) is without merit.

VII

The plaintiffs' motions to remand these actions will
be granted except for Atlas Data Privacy Corp. v. MyHeritage
Ltd., Civil Action No. 24-4392, as to which the motion to remand
will be denied.  The defendant MyHeritage (USA) Ltd. in that
action will be dismissed because it is fraudulently joined.

The court concludes that: (1) Atlas is a real party in
interest; (2) the assignments to and joinder of Atlas are not
collusive; (3) there is no fraudulent joinder except as noted
above; (4) complete diversity of citizenship is lacking under 28

U.S.C. § 1332(a) except for the one action noted above; and (5)

subject matter jurisdiction is absent under the class action and

mass action provisions of the Class Action Fairness Act, 28

U.S.C. § 1332(d).


                              BY THE COURT:


                              /s/ Harvey Bartle III
                                                    J.